# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SMITHKLINE BEECHAM CORPORATION D/B/A
GLAXOSMITHKLINE and
MCKESSON CORPORATION

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Rose Hefner, representative of Irving Hefner (deceased), Deborah
Citrano Johnson, representative of Stephen Citrano (deceased)

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* CIVIC CENTER COURTHOUSE, 400 McAllister Street, San Francisco, CA 94102 | CASE NUMBER: *(Número del Caso)* CGC-07-469525 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DAVID C. ANDERSON, THE MILLER FIRM, 108 RAILROAD AVE., ORANGE, VA 22960
TELEPHONE: 540-672-4224

| | | | |
|---|---|---|---|
| DATE: *(Fecha)* NOV 2 7 2007 | Gordon Park-Li Clerk, by *(Secretario)* | Deborah Steppe | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):*

   under: ☑ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SMITHKLINE BEECHAM CORPORATION D/B/A
GLAXOSMITHKLINE and
MCKESSON CORPORATION

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Rose Hefner, representative of Irving Hefner (deceased), Deborah
Citrano Johnson, representative of Stephen Citrano (deceased)

| |
|---|
| **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>CIVIC CENTER COURTHOUSE, 400 McAllister Street, San Francisco,<br>CA 94102 | CASE NUMBER:<br>*(Número del Caso):* CGC-07-469525 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DAVID C. ANDERSON, THE MILLER FIRM, 108 RAILROAD AVE., ORANGE, VA 22960
TELEPHONE: 540-672-4224

| DATE:<br>*(Fecha)* NOV 2 7 2007 | Gordon Park-Li Clerk, by<br>*(Secretario)* | Deborah Steppe | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):*

under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc.  www.USCourtForms.com |
|---|---|---|

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* <br> David C. Andersen Attorney License #19409 <br> The Miller Firm, LLC <br> 108 Railroad Ave., Orange, VA 22960 <br> TELEPHONE NO: 540-672-4224    FAX NO: 540-672-3055 <br> ATTORNEY FOR *(Name):* Plaintiff | **F I L E D** <br> San Francisco County Superior Court <br> **NOV 27 2007** <br> GORDON PARK-LI, Clerk <br> BY *Deborah Steppe* <br> DEBORAH STEPPE, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
**STREET ADDRESS:** 400 McAllister Street
**MAILING ADDRESS:** 400 McAllister Street
**CITY AND ZIP CODE:** San Francisco, CA 94102-4514
**BRANCH NAME:** Civic Center Courthouse

**CASE NAME:**
Rose Hefner, et al. v. GlaxoSmithKline & McKesson Corp.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CGC-07-469525 |
|---|---|---|---|---|
| [✓] Unlimited <br> (Amount demanded exceeds $25,000) | [ ] Limited <br> (Amount demanded is $25,000 or less) | [ ] Counter    [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | | JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):* 16
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 11/26/2007

David C. Andersen
*(TYPE OR PRINT NAME)*                                    *David C. Andersen* <br> *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use <br>
Judicial Council of California <br>
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.

SUMMONS ISSUED
FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

2007 NOV 27  PM 3: 30

GORDON PARK - LI, CLERK

BY: Deborah Steppe
DEPUTY CLERK

1  DAVID C. ANDERSEN (State Bar No. 194095)
2  THE MILLER FIRM, LLC
3  108 Railroad Avenue
4  Orange, VA 22960
5  Telephone: (540) 672-4224
6  Facsimile: (540) 672-3055
7  Email: dandersen@doctoratlaw.com

CASE MANAGEMENT CONFERENCE SET

APR 25 2008 -9ᵒᵒAM

DEPARTMENT 212

8  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9  **COUNTY OF SAN FRANCISCO**

10
11  ROSE HEFNER AS PERSONAL              :        Case No. **CGC-07-469525**
12  REPRESENTATIVE OF                    :
13  THE ESTATE OF                        :        COMPLAINT FOR DAMAGES
14  IRVING HEFNER (DECEASED)             :        AND JURY DEMAND
15                                       :
16  DEBORAH CITRANO JOHNSON              :        BASED ON:
17  AS PERSONAL                          :
18  REPRESENTATIVE OF                    :   1.   NEGLIGENCE
19  STEPHEN CITRANO                      :   2.   NEGLIGENT FAILURE
20  (DECEASED)                           :        TO ADEQUATELY WARN
21                                       :   3.   NEGLIGENCE *PER SE*
22                                       :   4.   NEGLIGENT
23                                       :        MISREPRESENTATION
24      Plaintiffs,                      :   5.   BREACH OF EXPRESS
25                                       :        WARRANTY
26                                       :   6.   BREACH OF IMPLIED
27                                       :        WARRANTY
28                                       :   7.   STRICT PRODUCTS LIABILITY
29                                       :        DEFECTIVE DESIGN
30                                       :   8.   STRICT PRODUCTS LIABILITY
31                                       :        MANUFACTURING AND DESIGN DEFECT
32                                       :   9.   STRICT PRODUCTS LIABILITY
33                                       :        FAILURE TO
34                                       :        ADEQUATELY WARN
35                                       :   10.  FRAUDULENT
36  SMITHKLINE BEECHAM                   :        MISREPRESENTATION
37  CORPORATION                          :   11.  VIOLATIONS OF CALIFORNIA
38  d/b/a GLAXOSMITHKLINE                :        and UNFAIR TRADE PRACTICES
39  MCKESSON CORPORATION                 :        AND CONSUMER PROTECTION LAW
40                                       :   12.  UNJUST ENRICHMENT
41      Defendants                       :   13.  WRONGFUL DEATH
42                                            14.  SURVIVAL ACTION
43                                            15.  LOSS OF CONSORTIUM
44                                            16.  PUNITIVE DAMAGES
45

1

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, individually and as representatives of the decedents' estates, by attorneys, THE MILLER FIRM, LLC, as and for the Verified Complaint herein allege upon information and belief the following:

## INTRODUCTION

1.    Plaintiffs' decedents are all individuals who have consumed Defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE'S drug Avandia®.

2.    This is an action to recover damages for personal injuries sustained by the Plaintiffs' decedents as the direct and proximate result of the wrongful conduct of the Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, (hereinafter referred to as "GSK") and MCKESSON CORPORATION (hereinafter referred to as "McKesson") in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of the widely-used diabetes prescription drug Avandia (rosiglitazone).

3.    Defendant GSK designed, researched, manufactured, advertised, promoted, marketed, sold, and/or distributed Avandia.

4.    Defendant McKesson is a corporation whose principal place of business is San Francisco, California.  McKesson distributed and sold Avandia in and throughout the State of California.

## JURISDICTION AND VENUE

5.    The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all

1    causes except those given by statute to other trial courts." The Statutes under which this action is

2    brought do not specify any other basis for jurisdiction.

3        6.    The California Superior Court has jurisdiction over the Defendants because, based

4    on information and belief, each is a corporation and/or entity organized under the laws of the State

5    of California, a foreign corporation or association authorized to do business in California and

6    registered with the California Secretary of State or has sufficient minimum contacts in California, or

7    otherwise intentionally avails itself of the California market so as to render the exercise of

8    jurisdiction over it by the California courts consistent with traditional notions of fair play and

9    substantial justice.

10        7.    Venue is proper in this Court pursuant to California Code of Civil Procedure Section

11    395 in that Defendant McKesson has its principal place of business in San Francisco.

12        8.    Furthermore Defendants GSK and McKesson have purposefully availed themselves

13    of the benefits and the protections of the laws within the State of California. Defendant McKesson

14    has its principal place of business within the state. Defendants GSK and McKesson have had

15    sufficient contact such that the exercise of jurisdiction would be consistent with the traditional

16    notions of fair play and substantial justice.

17        9.    Plaintiffs seek relief that is within the jurisdictional limits of the Court.

18            **PARTY PLAINTIFFS**

19        10.    The Plaintiff Rose Hefner, surviving spouse of decedent Irving Hefner, is a natural

20    person and a resident of the State of Louisiana.

21        11.    The Plaintiff Deborah Citrano Johnson, personal representative of decedent Stephen

22    Citrano, is a natural person and a resident of the State of Alabama.

23

3

COMPLAINT AND DAMAGES

## PARTY DEFENDANTS

12.    The Defendant, SmithKline Beecham Corporation d/b/a Glaxosmithkline, is a Pennsylvania corporation which has its principal place of business at One Franklin Plaza, 200 N. 16th Street, Philadelphia, Pennsylvania 19102.

13.    At all times material hereto, the Defendant, SmithKline Beecham Corporation d/b/a GlaxoSmithKline was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

14.    Defendant GSK includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons action on their behalf.

15.    Plaintiffs' decedents are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of the defendant was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendant and its directors, officers and/or managing agents.

16.    Upon information and belief, the Defendant, SmithKline Beecham Corporation d/b/a Glaxosmithkline, was formed as a result of the merger of pharmaceutical corporations Glaxo Wellcome, Inc., and SmithKline Beecham, Inc.

17.    At all times material hereto, the Defendant, McKesson, was a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business in San Francisco, California. McKesson is, and at all times material to

4

1   this action was, authorized to do business, and was engaged in substantial commerce and business

2   under the laws of the State of California.

3       18.    Defendant McKesson includes any and all parents, subsidiaries, affiliates, divisions,

4   franchises, partners, joint ventures and organizational units of any kind, their predecessors,

5   successors and assigns and their present officers, directors, employees, agents, representatives and

6   other persons action on their behalf.

7       19.    Plaintiffs' decedents are informed and believe, and based thereon allege, that in

8   committing the acts alleged herein, each and every managing agent, agent, representative and/or

9   employee of the defendant was working within the course and scope of said agency, representation

10   and/or employment with the knowledge, consent, ratification, and authorization of the Defendant

11   and its directors, officers and/or managing agents.

12       20.    At all times relevant to this action, Defendant McKesson packaged, distributed,

13   supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised,

14   promoted, and purported to warn or to inform users regarding the risks pertaining to, and assuaged

15   concerns about the pharmaceutical Avandia.

### BACKGROUND
### STATEMENT OF THE CASE

18       21.    Type 2 diabetes is the most common form of diabetes, afflicting 18 million

19   Americans and 200 million people worldwide.  This form of diabetes occurs when the body does

20   not make enough insulin (a hormone needed to convert sugar and other food into energy) or cannot

21   effectively use what it manages to produce.

22       22.    Avandia, created and marketed by GSK, is designed to treat persons with Type 2

23   diabetes by helping sensitize cells to insulin, thereby greatly assisting in blood-sugar control.  It also

24   is combined with metformin and sold as Advandamet.  Only one other drug like it, pioglitazone,

COMPLAINT AND DAMAGES

1  sold as Actos and Actoplus, made by Takeda Pharmaceuticals, is sold in the United States. In 2006,

2  Avandia represented 37% of the U.S. market for oral diabetes treatments. Thus, the U.S. market for

3  such drugs is huge, and Avandia faces only one competitor for that market.

4        23.    Avandia had a total U.S. sales of $2.2 billion in 2006, slightly less than the $2.6

5  billion in total U.S. sales for Actos, according to IMS Health, a healthcare information company.

6  Approximately 13 million Avandia prescriptions were filled in the U.S. last year, with a one-month

7  supply of Avandia selling for between $90 and $170. Avandia is critical to GSK, being the

8  company's second largest selling drug after Advair (an asthma medication).

9        24.    GSK's product Avandia can cause heart injury, excessive fluid retention, fluid-

10  overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac

11  arrest and death. In 2005, GSK performed an overview analysis of multiple Avandia trials, referred

12  to as a "meta-analysis", and shared the preliminary results with the Food and Drug Administration

13  ("FDA") in September 2005. Almost one year later, in August 2006, a more complete version of

14  the meta-analysis was provided to the FDA. The results of GSK's analysis showed that patients

15  taking Avandia had a 31% higher risk of adverse cardiovascular events such as heart attack due to

16  obstruction of blood flow.

17        25.    GSK's Avandia can cause heart injury, excessive fluid retention, fluid-overload

18  disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac arrest

19  and death. Not only was GSK aware of the dangers posed by Avandia, but data from these studies

20  continued to be made available to GSK. On May 21, 2007, Dr. Steven E. Nissen, a prominent

21  cardiologist associated with the Cleveland Clinic, published a study in the New England Journal of

22  Medicine of his analysis of 42 studies comprising of approximately 28,000 people who took

23  Avandia. These were on-line databases of GSK studies that were available on the Internet. Dr.

1  Nissen's meta-analysis revealed a 43% higher risk of heart attack for those taking Avandia

2  compared to people taking other diabetes drugs or no diabetes medication, and people taking

3  Avandia suffered such adverse events at a rate of 1.99%, as opposed to 1.51% for other patients.

4  Further, Dr. Nissen's analysis showed a 64% elevated risk of death from cardiovascular disease.

5      26.     Despite GSK's longstanding knowledge of these dangers, Avandia's label only

6  warns about possible heart failure and other heart problems when taken with insulin. GSK failed to

7  adequately warn and disclose to consumers that Avandia significantly increased the risk of adverse

8  cardiovascular events.   Furthermore, the proper and effective use of Avandia by Plaintiffs'

9  decedents was impaired due to GSK's failure to adequately warn of Avandia's defects and GSK's

10  failure to properly and adequately set forth such warnings in Avandia's drug labeling.

11      27.     GSK knew of these dangerous defects in Avandia from the many trials which it

12  performed and to which it had access and from its own analysis of these studies, but took no action

13  to adequately warn or remedy the defects, but instead concealed, suppressed and failed to disclose

14  these dangers.  Even in the face of Dr. Nissen's study, GSK continues to fail to warn of these

15  dangers through revised drug labeling.

16      28.     Not only has GSK failed to disclose in its labeling or advertising that Avandia is

17  actually dangerous for diabetics, GSK has represented and has continued to represent that they

18  manufacture and/or sell safe and dependable pharmaceuticals with safety as their first concern:

19      Like all innovative pharmaceutical companies, we carry out a series of clinical trials to test

20  each investigational drug for the potential to become a new medicine.

21
22                                          ***

23      Phase I trials typically involve health volunteers. *These trials study the safety of the drug

24  *and its interaction with the body,* for example, its concentration and duration in the blood following

25  various doses, and begin to answer such questions as whether the drug inhibits or amplifies the

26  effects of other medicines that might be taken at the same time.

27

Phase II studies enroll patients with the illness an investigational drug is designed to treat. These trials evaluate whether the drug shows favorable effects in treating an illness and seek to determine the proper dose. They provide an opportunity to explore the therapeutic potential of the drug in what may be quite different illnesses. *The evaluation of safety continues.*

If Phase II results have been encouraging, Phase III trials, the largest part of a clinical-development program, go forward. *Phase III trials are designed to provide the substantial evidence of efficacy and safety required*, in addition to data from earlier-phase trials, before regulatory agencies will approve the investigational drug as a medicine and allow it to be marketed.

http://www.gsk.com/research/clinical/index/html (emphasis supplied).

29.     GSK has also strongly touted their commitment to improving the quality of life: "We have a challenging and inspiring mission: to improve the qualify of human life by enabling people to do more, feel better and live longer." http://www.gsk.com/about/index.htm.

30.     On May 21, 2007, the FDA issued a Safety Alert on Avandia showing that there is a potentially significant risk of heart attack and heart-related deaths in patients taking Avandia.

31.     Based on these representations, upon which both Plaintiffs' decedents and Plaintiffs' decedents' prescribing physicians relied, including the omission from the Avandia labeling of the danger of increased risk of adverse cardiovascular events as a result of ingesting Avandia, Plaintiffs' decedents purchased and ingested Avandia believing that the drug would be safe and effective.

32.     In fact, however, Avandia poses significant safety risks due to defects in its chemical design and inadequate labeling.

33.     To date, GSK has failed to adequately warn or inform consumers, such as Plaintiffs' decedents or Plaintiffs' decedents' prescribing physicians, of the known defects in Avandia that can lead to increased risks of cardiovascular events, including but not limited to heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest, and death.

8

34.     As a result of GSK's omissions and/or misrepresentations, Plaintiffs' decedents ingested Avandia, and have suffered heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac arrest and sustained physical and financial damages including pain and suffering.

**COUNT I**
**NEGLIGENCE**
(Against Defendants GSK and McKesson)

35.     Plaintiffs repeat and reiterate the allegations previously set forth herein.

36.     That at all times hereinafter mentioned, Defendants were under a duty to exercise reasonable care in the design manufacture, testing processing, marketing advertising, labeling, packaging distribution, and sale of Avandia, and Defendants knew or should have known that Avandia was not safe and that the user could sustain injuries and harm from the drug.

37.     That Defendants GSK and McKesson negligently, recklessly, grossly negligently, wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others in that they failed to exercise reasonable care and failed to fulfill the above-stated duty by the manner that Defendants, directly and indirectly, advertised, marketed and promoted Avandia for the treatment of diabetes, even though Avandia, in fact, was not reasonably safe for such use, and furthermore, Defendants failed to adequately warn of the increased risk of serious cardiovascular events which Defendants knew or should have known about.

38.     That Defendants GSK and McKesson negligently, recklessly, grossly negligently, wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others by manufacturing, distributing, selling, advertising, marketing and promoting Avandia even though such drug was not safe or effective for any purpose because it caused serious cardiovascular events

9

1  and by failing to adequately warn the trusting public and prescribing health care providers of the

2  true, complete, and accurate risk and the lack of efficacy of Avandia.

3      39.    The aforesaid incident and the injuries sustained by Plaintiffs' decedents were

4  caused by or were contributed to by the negligence, recklessness, gross negligence, wantonness,

5  willfulness, and conscious and callous disregard of the safety of the public, including Plaintiffs'

6  decedents, on the part of Defendants in the design, manufacture, distribution, advertising, marketing

7  and promoting of Avandia as being safe and effective in the treatment of diabetes, and by inducing

8  the public, including Plaintiffs' decedents and Plaintiffs' decedents' prescribing physicians, to

9  believe that Avandia was effective in the treatment of the causes and symptoms of diabetes.

10      40.    Defendants GSK and McKesson failed to exercise reasonable care in the design,

11  manufacture, testing, processing, marketing, advertising, labeling, packaging, rebranding,

12  distribution and/or sale of Avandia in one or more of the following respects:

    a.  Designing, marketing, processing, advertising, packaging, distributing and/or selling a product that defendants knew, or should have known, carried the risk of serious; life-threatening side effects;

    b.  Failure to adequately test the product prior to placing the drug Avandia on the market;

    c.  Failure to use care in designing, developing and manufacturing their product so as to avoid posing unnecessary health risks to users of such product;

    d.  Failure to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Avandia;

    e.  Failure to advise consumers, such as Plaintiffs, that consumption of Avandia could result in severe and disabling side effects, including but not limited to heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure and severe injury to the heart leading to cardiac arrest and death.

    f.  Failure to advise the medical and scientific communities of the potential for severe and disabling side effects, including but not limited to heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, and severe injury to the heart leading to cardiac arrest, and death.

g. Failure to provide timely and/or adequate warnings about the potential health risks associated with the use of Avandia; and

h. Any and all other acts of negligence with respect to Avandia which may be shown at trial.

41.     That at all times hereinafter mentioned, upon information and belief, the above-described culpable conduct by Defendants GSK and McKesson was a proximate cause of injuries sustained by Plaintiffs' decedents.

42.     That as a result of the aforesaid occurrence, the injuries sustained by Plaintiffs' decedents resulting therefrom, Plaintiffs' decedents suffered extensive monetary and pecuniary losses and other compensatory damages were also incurred and paid out including necessary medical, hospital, and concomitant expenses.  In addition, Plaintiffs' decedents were deprived of a chance for safe and effective and/or successful treatment.

43.     By reason of the foregoing, Plaintiffs' decedents sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

44.     WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENT FAILURE TO ADEQUATELY WARN
(Against Defendants GSK and McKesson)

45.     Plaintiffs repeat and reiterate the allegations previously set forth herein.

46.     At all relevant times, defendants GSK and McKesson researched, developed, designed, tested, manufactured, inspected, labeled, and/or distributed, marketed, promoted, sold,

11

1    and otherwise released into the stream of commerce the pharmaceutical, Avandia, and in the course

2    of same, directly advertised or marketed the product to FDA, consumers or persons responsible for

3    consumers, and therefore had a duty to warn of the risks associated with the use of Avandia.

4         47.    At all relevant times, Avandia was under the exclusive control of the Defendants as

5    aforesaid, and was unaccompanied by appropriate warnings regarding all possible adverse side

6    effects and complications associated with the use of Avandia, dangerous drug-drug interactions and

7    food-drug interactions, and the comparative severity, duration and the extent of the risk of injury

8    with such use.

9         48.    At all relevant times, defendants failed to timely and reasonably warn of material

10    facts regarding the safety and efficacy of Avandia so that no reasonable medical care provider

11    would have prescribed, or no consumer would have used, Avandia had those facts been made

12    known to such providers and consumers.

13         49.    At all relevant times, defendants failed to perform or otherwise facilitate adequate

14    testing in that such testing would have shown that Avandia posed serious and potentially life-

15    threatening side effects and complications with respect to which full and proper warning accurately

16    and fully reflecting the symptoms, scope and severity should have been made to medical care

17    providers, the FDA and the public, including Plaintiffs' decedents.

18         50.    At all relevant times, Avandia, which was researched, developed, designed, tested,

19    manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into

20    the stream of commerce by Defendants, was defective due to inadequate post-marketing warning

21    and/or instruction because, after Defendants knew or should have known of the risk of serious and

22    potentially life-threatening side effects and complications from the use of Avandia, Defendants

1  failed to provide adequate warnings to medical care providers, the FDA and the consuming public,

2  including Plaintiffs, and continued to promote Avandia aggressively.

3      51.    As a direct and proximate result of Defendants' carelessness and negligence, the

4  Plaintiffs' decedents suffered severe and permanent physical injuries.  The Plaintiffs' decedents

5  endured substantial pain and suffering and underwent extensive medical and surgical procedures.

6  Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs'

7  decedents have lost past earnings and have suffered a loss of earning capacity.  The Plaintiffs have

8  suffered economic loss, and have otherwise been physically, emotionally and economically injured.

9  The Plaintiffs' injuries and damages are permanent and will continue into the future.  The Plaintiffs

10  seek actual and punitive damages from the Defendants as alleged herein.

11      52.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

12  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

13  relief as the Court deems proper.

14                                    **COUNT III**
15                              **NEGLIGENCE *PER SE***
16                        (Against Defendants GSK and McKesson)
17
18      53.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

19      54.    At all times mentioned herein, Defendants GSK and McKesson had an obligation not

20  to violate the law, in the manufacture, design, formulation, compounding, testing, production,

21  processing, assembling, inspection, research, distribution, marketing, labeling, packaging

22  preparation for use, sale and warning of the risks and dangers of the aforementioned product.

23      55.    At all times herein mentioned, Defendants violated the Federal Food, Drug and

24  Cosmetic Act, 21 U.S.C. Section 301 *et seq.*, related amendments and codes and federal regulations

25  provided thereunder, and other applicable laws, statutes and regulations.

---

**COMPLAINT AND DAMAGES**

56.    Plaintiffs' decedents, as purchasers and consumers of the product, are within the class of persons the statutes and regulations described above are designed to protect, and the injuries alleged herein are the type of harm these statutes are designed to prevent.

57.    Defendants' acts constitute an adulteration and/or misunderstanding as defined by the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 331, and constitutes a breach of duty subjecting Defendants to civil liability for all damages arising therefrom, under theories of negligence *per se.*

58.    Defendants failed to meet the standard of care set by the applicable statutes and regulations, which were intended for the benefit of individuals such as Plaintiffs' decedents, making Defendants negligent *per se:* (a) the labeling lacked adequate information on the use of the drug Avandia; (b) the labeling failed to provide adequate warnings of severe and disabling medical conditions as soon as there was reasonable evidence of their association with the drug; (c) there was inadequate information for patients for the safe and effective use of Defendants' drug; (d) there was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendants' drug; and (e) the labeling was misleading and promotional.

59.    As a direct and proximate result of Defendants' carelessness and negligence, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

60.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**
(Against Defendants GSK and McKesson)

61.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

62.    Defendants GSK and McKesson, in addition to knowing misrepresentations, made misrepresentations without any reasonable grounds for believing its statements to be true to Plaintiffs' decedents, other patients, and the medical community.

63.    Defendants GSK and McKesson, through their misrepresentations, intended to induce justifiable reliance by Plaintiffs' decedents, other patients, and the medical community.

64.    Defendants GSK and McKesson, through their marketing campaign and communications with treating physicians, were in a relationship so close to that of Plaintiffs' decedents and other patients that it approaches and resembles privity.

65.    Defendants GSK and McKesson owed a duty to the medical community, Plaintiffs' decedents, and other consumers, to conduct appropriate and adequate studies and tests for all products, including Avandia, and to provide appropriate and adequate information and warnings.

66.    Defendants failed to conduct appropriate or adequate studies for Avandia.

67.    Defendants failed to exercise reasonable care by failing to conduct studies and tests of Avandia.

68.    As a direct and proximate result of Defendants' carelessness and negligence, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures.

COMPLAINT AND DAMAGES

1    Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs'

2    decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have

3    suffered economic loss, and have otherwise been physically, emotionally and economically injured.

4    The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs

5    seek actual and punitive damages from the Defendants as alleged herein.

6        69.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

7    treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

8    relief as the Court deems proper.

## COUNT V
## BREACH OF EXPRESS WARRANTY
(Against Defendants GSK and McKesson)

13        70.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

14        71.    Defendants GSK and McKesson expressly represented to Plaintiffs' decedents and

15    other consumers and the medical community that Avandia was safe and fit for its intended

16    purposes, that is was of merchantable quality, that it did not produce any dangerous side effects, and

17    that it was adequately tested.

18        72.    Avandia does not conform to Defendants' express representations because it is not

19    safe, has numerous and serious side effects, and causes severe and permanent injuries.

20        73.    At all relevant times Avandia did not perform as safely as an ordinary consumer

21    would expect, when used as intended or in a reasonably foreseeable manner.

22        74.    Plaintiffs' decedents, other consumers, and the medical community relied upon

23    Defendants' express warranties.

24        75.    As a direct and proximate result of Defendants' breach of express warranty, the

25    Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents

16

1    endured substantial pain and suffering and underwent extensive medical and surgical procedures.

2    Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs'

3    decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have

4    suffered economic loss, and have otherwise been physically, emotionally and economically injured.

5    The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs

6    seek actual and punitive damages from the Defendants as alleged herein.

7       76.   Defendants' conduct as described above was committed with knowing, conscious,

8    wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

9    consumers such as Plaintiffs' decedents, thereby entitling Plaintiffs to punitive damages so as to

10   punish them and deter it from similar conduct in the future.

11      77.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

12   treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

13   relief as the Court deems proper.

### COUNT VI
### BREACH OF IMPLIED WARRANTY
(Against Defendants GSK and McKesson)

18      78.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

19      79.   The Defendants GSK and McKesson marketed, distributed, supplied and sold the

20   subject product for the treatment of diabetes.

21      80.   At the time that the Defendants GSK and McKesson marketed, distributed, supplied,

22   and sold Avandia, they knew of the use for which the subject product was intended and impliedly

23   warranted it to be of merchantable quality and safe and fit for such use.

24      81.   The Plaintiffs' decedents, individually and through prescribing physicians,

25   reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

---

17

COMPLAINT AND DAMAGES

82.    The Plaintiffs' decedents were prescribed, purchased, and used the subject product for its intended purpose.

83.    Due to Defendants' wrongful conduct as alleged herein, the Plaintiffs' decedents could not have known about the nature of the risks and side effects associated with the subject product until after use.

84.    Contrary to the implied warranty for the subject product, Avandia was not of merchantable quality, and was not safe or fit for its intended uses and purposes as alleged herein.

85.    As a direct and proximate result of Defendants' breach of implied warranty, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

86.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VII
## STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN
### (Against Defendants GSK and McKesson)

87.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

18

88.    At all times material to this action, the Defendants were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

89.    The subject product is defective and unreasonably dangerous to consumers.

90.    Avandia is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

91.    At all times material to this action, Avandia was expected to reach, and did reach, consumers in this jurisdiction and through the United States, including the Plaintiffs' decedents herein, without substantial change in the condition in which it was sold.

92.    At all times material to this action, Avandia was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a.    When placed in the stream of commerce, Avandia contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting the Plaintiffs' decedents to risks that exceeded the benefits of the subject product, including but not limited to the risks of developing heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects in an unacceptably high number of its users;

b.    When placed in the stream of commerce, Avandia was defective in design and formulation, making the use of Avandia more dangerous than an ordinary consumer would expect,

COMPLAINT AND DAMAGES

1  and more dangerous than other risks associated with the other medications and similar drugs on the

2  market for the treatment of diabetes;

3      c.  The subject product's design defects existed before it left the control of the Defendants;

4      d.  Avandia was insufficiently tested;

5      e.  Avandia caused harmful side effects that outweighed any potential utility; and

6      f.  Avandia was not accompanied by adequate instructions and/or warnings to fully apprise

7  consumers, including the Plaintiffs' decedents herein, of the full nature and extent of the risks and

8  side effects associated with its use, thereby rendering Defendants liable to Plaintiffs, individually

9  and collectively.

10      93.  In addition, at the time the subject product left the control of the Defendants, there

11  were practical and feasible alternative designs that would have prevented and/or significantly

12  reduced the risk of Plaintiffs' decedents' injuries without impairing the reasonably anticipated or

13  intended function of the product.  These safer alternative designs were economically and

14  technologically feasible, and would have prevented or significantly reduced the risk of Plaintiffs'

15  decedents' injuries without substantially impairing the product's utility.

16      94.  As a direct and proximate result of the subject product's defective design, the

17  Plaintiffs' decedents suffered severe and permanent physical injuries.  The Plaintiffs' decedents

18  endured substantial pain and suffering and underwent extensive medical and surgical procedures.

19  Plaintiffs' decedents incurred significant expenses for medical care and treatment.  Plaintiffs'

20  decedents have lost past earnings and have suffered a loss of earning capacity.  The Plaintiffs have

21  suffered economic loss, and have otherwise been physically, emotionally and economically injured.

22  The Plaintiffs' injuries and damages are permanent and will continue into the future.  The Plaintiffs

23  seek actual and punitive damages from the Defendants as alleged herein.

COMPLAINT AND DAMAGES

95.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT VIII
### STRICT PRODUCTS LIABILITY – MANUFACTURING AND DESIGN DEFECT
(Against Defendants GSK and McKesson)

96.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

97.    At all times material to this action, Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

98.    At all times material to this action, Avandia was expected to reach, and did reach, consumers in this jurisdiction and throughout the United States, including the Plaintiffs herein without substantial change in the condition in which it was sold.

99.    At all times material to this action, Avandia was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a.    When placed in the stream of commerce, Avandia contained manufacturing defects which rendered the product unreasonably dangerous;

b.    The subject product's manufacturing defects occurred while the product was in the possession and control of the Defendants;

c.    The subject product was not made in accordance with the Defendants' specifications and performance standards;

21

COMPLAINT AND DAMAGES

1        d.  The subject product's manufacturing defects existed before it left the control of the

2    Defendants;

3        100.  As a direct and proximate result of the subject product's manufacturing defects, the

4    Plaintiffs' decedents suffered severe and permanent physical injuries.  The Plaintiffs' decedents

5    endured substantial pain and suffering and underwent extensive medical and surgical procedures.

6    Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs'

7    decedents have lost past earnings and have suffered a loss of earning capacity.  The Plaintiffs have

8    suffered economic loss, and have otherwise been physically, emotionally and economically injured.

9    The Plaintiffs' injuries and damages are permanent and will continue into the future.  The Plaintiffs

10    seek actual and punitive damages from the Defendants as alleged herein.

11        101.  WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

12    treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

13    relief as the Court deems proper.

## COUNT IX
### STRICT PRODUCTS LIABILITY – FAILURE TO ADEQUATELY WARN
(Against Defendants GSK and McKesson)

18        102.  Plaintiffs repeat and reiterate the allegations previously set forth herein.

19        103.  Avandia was defective and unreasonably dangerous when it left the possession of the

20    Defendants in that it contained warnings insufficient to alert consumers, including the Plaintiffs'

21    decedents herein, of the dangerous risks and reactions associated with the subject product, including

22    but not limited to its propensity to cause heart injury, excessive fluid retention, fluid-overload

23    disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and

24    death and other serious injuries and side effects over other forms of diabetes treatment.

COMPLAINT AND DAMAGES

104.   The Plaintiffs' decedents were prescribed and used the subject product for its intended purpose.

105.   The Plaintiffs' decedents could not have discovered any defect in the subject product through the exercise of reasonable care.

106.   The Defendants GSK and McKesson, as manufacturers and/or distributors of the subject prescription product, are held to the level of knowledge of an expert in the field.

107.   The warnings that were given by the Defendants GSK and McKesson were not accurate, clear and/or were ambiguous.

108.   The warnings that were given by the Defendants GSK and McKesson failed to properly warn physicians of the increased risks of heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects.

109.   The warnings that were given by the Defendants GSK and McKesson failed to properly warn consumers of the increased risks of heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects.

110.   The Plaintiffs' decedents, individually and through prescribing physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

111.   The Defendants GSK and McKesson had a continuing duty to adequately warn the Plaintiffs' decedents of the dangers associated with the subject product and of the poor efficacy of the product.

23

COMPLAINT AND DAMAGES

112.   Had the Plaintiffs' decedents and/or Plaintiffs' decedents' prescribing physicians received adequate warnings regarding the risks, and the lack of benefits, of the subject product, Plaintiffs' decedents would not have used it.

113.   As a proximate result of the subject product's manufacturing defects, the Plaintiffs' decedents suffered severe and permanent physical injuries.  The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures.  Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity.  The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured.  The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

114.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT X
## FRAUDULENT MISREPRESENTATION
(Against Defendants GSK and McKesson)

115.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

116.   Defendants GSK and McKesson widely advertised and promoted Avandia as a safe and effective medication both in direct-to-consumer marketing and in fraudulent promotion to the health care providers including Plaintiffs' decedents prescribing physicians.

117.   Defendants GSK and McKesson had a duty to disclose material information about serious side effects to consumers such as Plaintiffs.  Additionally by virtue of Defendants' partial disclosures about the medication, in which Defendants touted Avandia as safe and effective

24

COMPLAINT AND DAMAGES

treatment, Defendants had a duty to disclose all facts about the risks of use associated with the medication, including the potential for the medication to cause heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest, and death. Defendants intentionally failed to adequately disclose this information for the purpose of inducing consumers, such as Plaintiffs' decedents, to purchase Defendants' dangerous product.

118.    Had Plaintiffs been aware of the hazards associated with Avandia, Plaintiffs' decedents would not have consumed the product that lead proximately to Plaintiffs' decedents' adverse health effects.

119.    Defendants' advertisements regarding Avandia made material misrepresentations to the effect that Avandia was a safe and effective treatment, which misrepresentations Defendant knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiffs' decedents, to purchase such product. Plaintiffs' decedents relied in part on these material misrepresentations in deciding to purchase and consume Avandia to their detriment.

120.    The damages sustained by Plaintiffs' decedents were a direct and foreseeable result of, and were proximately caused by Defendants' misrepresentations, concealment and omissions.

121.    Defendants' conduct was willful, wanton, and reckless. Based on the intentionally dishonest nature of Defendants' conduct, which was directed at Plaintiffs' decedents and the public generally, Defendants should also be held liable for punitive damages.

122.    Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs' decedents and other members of the public who were prescribed and who ingested Avandia for the treatment of diabetes have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault

---

1  or lack of diligence on their part, and could not reasonably have discovered the fraudulent nature of

2  Defendants' conduct, and information and documents concerning the safety and efficacy of

3  Avandia.  Furthermore, due to the aforesaid allegations, Plaintiffs' decedents may rely on the

4  discovery rule in pursuit of this claim.

5      123.    By reason of the foregoing, Plaintiffs' decedents sustained damages in a sum which

6  exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and

7  in addition thereto, Plaintiffs seek punitive and exemplary damages against Defendants in an

8  amount to be determined upon the trial of this matter.

9      124.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

10  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

11  relief as the Court deems proper.

## COUNT XI
## VIOLATIONS OF CALIFORNIA UNFAIR TRADE PRACTICES AND CONSUMER
## PROTECTION LAW
### (Against Defendants GSK and McKesson)

17      125.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

18      126.    Defendants have engaged in unfair competition or unfair or deceptive acts or

19  practices in violation of Cal. Bus. & Prof. Code § 17200, et seq. and the Consumer Legal Remedies

20  Act, Civ. Code § 1750 et seq. ("CLRA").

21      127.    Defendants GSK and McKesson acted, used and employed deception, unfair and

22  deceptive acts and practices, fraud, false promises, misrepresentations, concealment, suppression

23  and omission of material facts with intent that physicians and medical providers rely upon such

24  concealment, suppression and omission, and for the purpose of influencing and inducing physicians

25  and medical providers to prescribe Avandia, for the treatment of diabetes to patients/consumers

26  such as Plaintiffs' decedents, and causing such patients/consumers to purchase, acquire and use

COMPLAINT AND DAMAGES

1    Avandia for the treatment of diabetes, as prescribed by their physicians and medical providers, in

2    connection with the sale and advertisement of the drug Avandia, in violation of California law.

3        128.   By reason of Defendants' acts, uses and employment of deception, unfair and

4    deceptive acts and practices, fraud, false promises, misrepresentations, concealment, suppression

5    and omission of material facts, reasonable patients/consumers acting reasonably, such as Plaintiffs'

6    decedents, were caused to purchase and ingest Avandia, and thereby sustain serious personal

7    injuries.

8        129.   By reason of the foregoing, Plaintiffs sustained damages in a sum which exceeds the

9    jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition

10   thereto, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be

11   determined upon the trial of this matter.

**COUNT XII**
**UNJUST ENRICHMENT**
(Against Defendants GSK and McKesson)

16       130.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

17       131.   To the detriment of Plaintiffs' decedents the Defendants GSK and McKesson have

18   been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of,

19   inter alia, payments for Avandia.

20       132.   Plaintiffs' decedents were injured by the cumulative and indivisible nature of the

21   Defendants' conduct.  The cumulative effect of the Defendants' conduct directed at physicians and

22   consumers was to artificially create a demand for Avandia at an artificially inflated price.  Each

23   aspect of the Defendants' conduct combined to artificially create sales of Avandia.

COMPLAINT AND DAMAGES

133.    The Defendants GSK and McKesson have unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Avandia and continue to so benefit to the detriment and at the expense of Plaintiffs.

134.    Accordingly, Plaintiffs seek full disgorgement and restitution of the Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

135.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XIII
## WRONGFUL DEATH
### (Against Defendants GSK and McKesson)

136.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

137.    As a result of the acts and/or omissions of the Defendants as set forth herein, Plaintiffs' decedents suffered serious emotional and bodily injuries resulting in death.

138.    Plaintiff Deborah Citrano Johnson, as designated personal representative of Stephen Citrano, is entitled to recover damages as decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled, herein pursuant to Cal. Code Civ. Proc. § 377.60.

139.    Plaintiff Rose Hefner, as decedent's surviving spouse, is entitled to recover damages as decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled, herein pursuant to Cal. Code Civ. Proc. § 377.60.

140.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XIV
## SURVIVAL ACTION
(Against Defendants GSK and McKesson)

141.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

142.   As a result of the actions and inactions of the Defendants, Plaintiffs' decedents were caused harm and suffering before their death.

143.   Plaintiffs in their own right and as personal representatives of the decedents' estates seek damages compensable under Cal. Code Civ. Proc. § 377.30.

144.   Plaintiffs are potential beneficiaries of this action as surviving heirs, making them the decedents' successors in interest under Cal. Code Civ. Proc. § 377.30.

145.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XV
## LOSS OF CONSORTIUM
(Against Defendants GSK and McKesson)

146.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

147.   In cases where Plaintiffs' decedents were married at the time of their respective injuries, the spouses of such Plaintiffs were entitled to their comfort, care, affection, companionship, services, society, advice, guidance, counsel, and consortium.

148.   As a direct and proximate result of one or more of those wrongful acts or omissions of the Defendants described above, Plaintiffs' decedents' spouses have been and will be deprived of

29

1   their comfort, care, affection, companionship, services, society, advice, guidance, counsel and

2   consortium.

3       149.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

4   treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

5   relief as the Court deems proper.

**COUNT XVI**
**PUNITIVE DAMAGES**
(Against Defendants GSK and McKesson)

10      150.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

11      151.    At all times material hereto, the Defendants GSK and McKesson knew or should

12  have known that the subject product was inherently more dangerous with respect to the risks of

13  heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke, and

14  severe injury to the heart leading to cardiac arrest, and death than alternative treatments for

15  diabetes.

16      152.    At all times material hereto, the Defendants GSK and McKesson attempted to

17  misrepresent and did misrepresent facts concerning the safety of the subject product.

18      153.    Defendants' misrepresentations included knowingly withholding material

19  information from the medical community and the public, including the Plaintiffs' decedents herein,

20  concerning the safety of the subject product.

21      154.    At all times material hereto, the Defendants GSK and McKesson knew and

22  recklessly disregarded the fact that Avandia causes debilitating and potentially lethal side effects

23  with greater frequency than safer alternative methods of treatment for diabetes.

24      155.    Notwithstanding the foregoing, the Defendants GSK and McKesson continued to

25  aggressively market the subject product to consumers, including the Plaintiffs' decedents herein,

30

**COMPLAINT AND DAMAGES**

1   without disclosing the aforesaid side effects when there were safer alternative methods of treatment

2   for diabetes.

3        156.   The Defendants GSK and McKesson knew of the subject product's defective and

4   unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture,

5   market, distribute and sell it so as to maximize sales and profits at the expense of the health and

6   safety of the public, including the Plaintiffs' decedents herein, in conscious and/or negligent

7   disregard of the foreseeable harm caused by Avandia.

8        157.   Defendants GSK and McKesson intentionally concealed and/or recklessly failed to

9   disclose to the public, including the Plaintiffs' decedents herein, the potentially life threatening side

10  effects of Avandia in order to ensure continued and increased sales.

11       158.   The Defendants' intentional and/or reckless failure to disclose information deprived

12  the Plaintiffs' decedents of necessary information to enable Plaintiffs' decedents to weigh the true

13  risks of using the subject product against its benefits.

14       159.   As a direct and proximate result of the Defendants' conscious and deliberate

15  disregard for the rights and safety of consumers such as the Plaintiffs, the Plaintiffs' decedents

16  suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain

17  and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents

18  incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past

19  earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss,

20  and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries

21  and damages are permanent and will continue into the future. The Plaintiffs seek actual and

22  punitive damages from the Defendants as alleged herein.

160.   The aforesaid conduct of Defendants GSK and McKesson was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including the Plaintiffs' decedents herein, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

161.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against Defendants as follows:

(1)   Judgment for Plaintiffs and against defendants;

(2)   Damages in the form of compensatory damages in excess of the jurisdictional limits, trebled on all applicable counts;

(3)   Physical pain and suffering of the Plaintiffs

(4)   Pre and post judgment interest at the lawful rate;

(5)   Reasonably attorneys' fees and costs and expert fees;

(6)   A trial by jury on all issues of the case;

(7)   For any other relief as this court may deem equitable and just;

(8)   Restitution of all purchase costs that Plaintiffs paid for Avandia disgorgement of Defendants' profits, and such other relief as provided by law;

(9)   Exemplary and punitive damages in an amount in excess of the jurisdictional limits, trebled on all applicable counts;

(10)   All Bill of Costs elements; and

(11)   Such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable in this action.

1  Dated: November 26, 2007          Respectfully submitted,

2

3

4

5                                    David C. Andersen (Bar No. 194095)

6                                    THE MILLER FIRM, LLC

7                                    Attorneys for Plaintiffs

8                                    108 Railroad Avenue

9                                    Orange, VA 22960

10                                   Phone: (540) 672-4224

11                                   Fax: (540) 672-3055

12                                   Email:dandersen@doctoratlaw.com

13

33

COMPLAINT AND DAMAGES