1  DONALD F. ZIMMER, JR. (State Bar No. 112279)
2  KRISTA L. COSNER (State Bar No. 213338)
   DRINKER BIDDLE & REATH LLP
3  50 Fremont Street, 20th Floor
   San Francisco, California 94105
4  Telephone: (415) 591-7500
   Facsimile: (415) 591-7510

5  Attorneys for Defendants
   SMITHKLINE BEECHAM CORPORATION dba
6  GLAXOSMITHKLINE and McKESSON
   CORPORATION                                E-filing
7

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  ROSE HEFNER AS PERSONAL              Case No. 07                6050
    REPRESENTATIVE OF THE ESTATE OF
13  IRVING HEFNER (DECEASED)             DECLARATION OF KRISTA L.
                                         COSNER IN SUPPORT OF NOTICE
14  DEBORAH CITRANO JOHNSON AS           OF REMOVAL AND REMOVAL,
    PERSONAL REPRESENTATIVE OF           UNDER 28 U.S.C. § 1441(B)
15  STEPHEN CITRANO (DECEASED)           (DIVERSITY) and 28 U.S.C. § 1441(C)
                                         (FEDERAL QUESTION) OF
16                 Plaintiffs,           DEFENDANT SMITHKLINE
                                         BEECHAM CORPORATION dba
17       v.                              GLAXOSMITHKLINE

18  SMITHKLINE BEECHAM
    CORPORATION dba
19  GLAXOSMITHKLINE and McKESSON
    CORPORATION,
20
                   Defendants.
21

22

23       I, KRISTA L. COSNER, declare:

24       1.    I am an attorney admitted to practice before all courts of the State of

25  California and am an Associate with Drinker Biddle & Reath, LLP, attorneys for

26  SMITHKLINE BEECHAM CORPORATION dba GLAXOSMITHKLINE ("GSK") and

27  McKESSON CORPORATION ("McKesson") (collectively, "Defendants") in this action.

28  I make this Declaration based on my personal knowledge, in support of Defendant GSK's

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\392477\1     DECLARATION OF KRISTA L. COSNER IN SUPPORT OF NOTICE OF REMOVAL          CASE NO.

1  removal of *Rose Hefner, et al. v. SmithKline Beecham Corporation d/b/a*

2  *GlaxoSmithKline, et al.*, San Francisco Superior Court Case Number CGC-07-469525, to

3  this Court. I would and could competently testify to the matters stated in this Declaration

4  if called as a witness.

5    2.    Upon information and belief none of the defendants have been served with

6  plaintiffs' complaint.

7    3.    A true and accurate copy of the Complaint in this action is attached as

8  **Exhibit A.** There have been no additional proceedings in the State court action.

9    4.    A true and accurate copy of the Judicial Panel on Multidistrict Litigation's

10  Transfer Order, *In re Avandia Marketing, Sales Practices and Products Liability*

11  *Litigation*, MDL 1871 (E.D.P.A.) is attached as **Exhibit B**.

12    5.    The Declaration of Greg Yonko In Support of Defendant's SmithKline

13  Beecham's Notice of Removal and Removal Action Under 28 U.S.C. § 1441(b)

14  (Diversity) and 28 U.S.C. § 1441(c) (Federal Question) of Defendant SmithKline

15  Beecham Corporation dba GlaxoSmithKline filed in *Dorothy Bone, et al. v. SmithKline*

16  *Beechman, et al.* Case No: CV-075886 is attached as **Exhibit C**.

17    6.    This is one of many cases that have been filed recently in both federal and

18  state courts across the country involving the prescription drug Avandia.

19    7.    Plaintiff's counsel, The Miller Firm, has filed Avandia cases in both state

20  and federal courts, but only in the cases filed in California has The Miller Firm named

21  McKesson or any distributor as a defendant.

22    8.    GSK intends to seek the transfer of this action to that Multidistrict

23  Litigation, *In re Avandia Marketing, Sales Practices and Products Liability Litigation*,

24  MDL 1871, and shortly will provide the JPML with notice of this action pursuant to the

25  procedure for "tag along" actions set forth in the rules of the JPML.

26    9.    GSK is, and was at the time plaintiff commenced this action, a corporation

27  organized under the laws of the Commonwealth of Pennsylvania with its principal place

28  of business in Philadelphia, Pennsylvania, and therefore is a citizen of Pennsylvania for

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\392477\1

2

DECLARATION OF KRISTA L. COSNER IN SUPPORT OF NOTICE OF REMOVAL          CASE NO.

1 | purposes of determining diversity.

2 |     I declare under penalty of perjury under the laws of the United States of America that

3 | the foregoing is true and correct.  Executed on this 29th day of November, 2007 in San

4 | Francisco, California.

5

6

7 | KRISTA L. COSNER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\392477\1

3

DECLARATION OF KRISTA L. COSNER IN SUPPORT OF NOTICE OF REMOVAL      CASE NO.

# EXHIBIT

# A

**SUMMONS ISSUED**
**FILED**
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

**2007 NOV 27  PM 3: 30**

GORDON PARK - LI, CLERK

BY: Deborah Steppe
DEPUTY CLERK

1   DAVID C. ANDERSEN (State Bar No. 194095)
2   THE MILLER FIRM, LLC
3   108 Railroad Avenue          CASE MANAGEMENT CONFERENCE SET
4   Orange, VA 22960
5   Telephone: (540) 672-4224          APR 2 5 2008  -9:00 AM
6   Facsimile: (540) 672-3055
7   Email: dandersen@doctoratlaw.com          DEPARTMENT 212

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                         COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ROSE HEFNER AS PERSONAL : | Case No. **CGC-07-469525** |
| REPRESENTATIVE OF : | |
| THE ESTATE OF : | COMPLAINT FOR DAMAGES |
| IRVING HEFNER (DECEASED) : | AND JURY DEMAND |
| : | |
| DEBORAH CITRANO JOHNSON : | BASED ON: |
| AS PERSONAL : | |
| REPRESENTATIVE OF : | 1.  NEGLIGENCE |
| STEPHEN CITRANO : | 2.  NEGLIGENT FAILURE |
| (DECEASED) : | TO ADEQUATELY WARN |
| : | 3.  NEGLIGENCE *PER SE* |
| : | 4.  NEGLIGENT |
| : | MISREPRESENTATION |
| Plaintiffs, : | 5.  BREACH OF EXPRESS |
| : | WARRANTY |
| : | 6.  BREACH OF IMPLIED |
| : | WARRANTY |
| : | 7.  STRICT PRODUCTS LIABILITY |
| : | DEFECTIVE DESIGN |
| : | 8.  STRICT PRODUCTS LIABILITY |
| : | MANUFACTURING AND DESIGN DEFECT |
| : | 9.  STRICT PRODUCTS LIABILITY |
| : | FAILURE TO |
| : | ADEQUATELY WARN |
| : | 10. FRAUDULENT |
| SMITHKLINE BEECHAM : | MISREPRESENTATION |
| CORPORATION : | 11. VIOLATIONS OF CALIFORNIA |
| d/b/a GLAXOSMITHKLINE : | and UNFAIR TRADE PRACTICES |
| MCKESSON CORPORATION : | AND CONSUMER PROTECTION LAW |
| : | 12. UNJUST ENRICHMENT |
| Defendants : | 13. WRONGFUL DEATH |
| | 14. SURVIVAL ACTION |
| | 15. LOSS OF CONSORTIUM |
| | 16. PUNITIVE DAMAGES |

1

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, individually and as representatives of the decedents' estates, by attorneys, THE MILLER FIRM, LLC, as and for the Verified Complaint herein allege upon information and belief the following:

## INTRODUCTION

1.     Plaintiffs' decedents are all individuals who have consumed Defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE'S drug Avandia®.

2.     This is an action to recover damages for personal injuries sustained by the Plaintiffs' decedents as the direct and proximate result of the wrongful conduct of the Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, (hereinafter referred to as "GSK") and MCKESSON CORPORATION (hereinafter referred to as "McKesson") in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of the widely-used diabetes prescription drug Avandia (rosiglitazone).

3.     Defendant GSK designed, researched, manufactured, advertised, promoted, marketed, sold, and/or distributed Avandia.

4.     Defendant McKesson is a corporation whose principal place of business is San Francisco, California.  McKesson distributed and sold Avandia in and throughout the State of California.

## JURISDICTION AND VENUE

5.     The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all

2

1  causes except those given by statute to other trial courts." The Statutes under which this action is

2  brought do not specify any other basis for jurisdiction.

3      6.    The California Superior Court has jurisdiction over the Defendants because, based

4  on information and belief, each is a corporation and/or entity organized under the laws of the State

5  of California, a foreign corporation or association authorized to do business in California and

6  registered with the California Secretary of State or has sufficient minimum contacts in California, or

7  otherwise intentionally avails itself of the California market so as to render the exercise of

8  jurisdiction over it by the California courts consistent with traditional notions of fair play and

9  substantial justice.

10     7.    Venue is proper in this Court pursuant to California Code of Civil Procedure Section

11 395 in that Defendant McKesson has its principal place of business in San Francisco.

12     8.    Furthermore Defendants GSK and McKesson have purposefully availed themselves

13 of the benefits and the protections of the laws within the State of California. Defendant McKesson

14 has its principal place of business within the state. Defendants GSK and McKesson have had

15 sufficient contact such that the exercise of jurisdiction would be consistent with the traditional

16 notions of fair play and substantial justice.

17     9.    Plaintiffs seek relief that is within the jurisdictional limits of the Court.

18                              **PARTY PLAINTIFFS**

19     10.   The Plaintiff Rose Hefner, surviving spouse of decedent Irving Hefner, is a natural

20 person and a resident of the State of Louisiana.

21     11.   The Plaintiff Deborah Citrano Johnson, personal representative of decedent Stephen

22 Citrano, is a natural person and a resident of the State of Alabama.

23

---

**3**

COMPLAINT AND DAMAGES

## PARTY DEFENDANTS

1

2    12.    The Defendant, SmithKline Beecham Corporation d/b/a Glaxosmithkline, is a

3    Pennsylvania corporation which has its principal place of business at One Franklin Plaza, 200 N.

4    16th Street, Philadelphia, Pennsylvania 19102.

5    13.    At all times material hereto, the Defendant, SmithKline Beecham Corporation d/b/a

6    GlaxoSmithKline was engaged in the business of designing, developing, manufacturing, testing,

7    packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

8    14.    Defendant GSK includes any and all parents, subsidiaries, affiliates, divisions,

9    franchises, partners, joint ventures and organizational units of any kind, their predecessors,

10    successors and assigns and their present officers, directors, employees, agents, representatives and

11    other persons action on their behalf.

12    15.    Plaintiffs' decedents are informed and believe, and based thereon allege, that in

13    committing the acts alleged herein, each and every managing agent, agent, representative and/or

14    employee of the defendant was working within the course and scope of said agency, representation

15    and/or employment with the knowledge, consent, ratification, and authorization of the Defendant

16    and its directors, officers and/or managing agents.

17    16.    Upon information and belief, the Defendant, SmithKline Beecham Corporation d/b/a

18    Glaxosmithkline, was formed as a result of the merger of pharmaceutical corporations Glaxo

19    Wellcome, Inc., and SmithKline Beecham, Inc.

20    17.    At all times material hereto, the Defendant, McKesson, was a corporation organized,

21    existing and doing business under and by virtue of the laws of the State of Delaware, with its

22    principal place of business in San Francisco, California. McKesson is, and at all times material to

1   this action was, authorized to do business, and was engaged in substantial commerce and business

2   under the laws of the State of California.

3       18.    Defendant McKesson includes any and all parents, subsidiaries, affiliates, divisions,

4   franchises, partners, joint ventures and organizational units of any kind, their predecessors,

5   successors and assigns and their present officers, directors, employees, agents, representatives and

6   other persons action on their behalf.

7       19.    Plaintiffs' decedents are informed and believe, and based thereon allege, that in

8   committing the acts alleged herein, each and every managing agent, agent, representative and/or

9   employee of the defendant was working within the course and scope of said agency, representation

10  and/or employment with the knowledge, consent, ratification, and authorization of the Defendant

11  and its directors, officers and/or managing agents.

12      20.    At all times relevant to this action, Defendant McKesson packaged, distributed,

13  supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised,

14  promoted, and purported to warn or to inform users regarding the risks pertaining to, and assuaged

15  concerns about the pharmaceutical Avandia.

16                          **BACKGROUND**
17                       **STATEMENT OF THE CASE**

18      21.    Type 2 diabetes is the most common form of diabetes, afflicting 18 million

19  Americans and 200 million people worldwide.  This form of diabetes occurs when the body does

20  not make enough insulin (a hormone needed to convert sugar and other food into energy) or cannot

21  effectively use what it manages to produce.

22      22.    Avandia, created and marketed by GSK, is designed to treat persons with Type 2

23  diabetes by helping sensitize cells to insulin, thereby greatly assisting in blood-sugar control.  It also

24  is combined with metformin and sold as Advandamet.  Only one other drug like it, pioglitazone,

---

5

1    sold as Actos and Actoplus, made by Takeda Pharmaceuticals, is sold in the United States. In 2006,

2    Avandia represented 37% of the U.S. market for oral diabetes treatments. Thus, the U.S. market for

3    such drugs is huge, and Avandia faces only one competitor for that market.

4        23.    Avandia had a total U.S. sales of $2.2 billion in 2006, slightly less than the $2.6

5    billion in total U.S. sales for Actos, according to IMS Health, a healthcare information company.

6    Approximately 13 million Avandia prescriptions were filled in the U.S. last year, with a one-month

7    supply of Avandia selling for between $90 and $170. Avandia is critical to GSK, being the

8    company's second largest selling drug after Advair (an asthma medication).

9        24.    GSK's product Avandia can cause heart injury, excessive fluid retention, fluid-

10   overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac

11   arrest and death. In 2005, GSK performed an overview analysis of multiple Avandia trials, referred

12   to as a "meta-analysis", and shared the preliminary results with the Food and Drug Administration

13   ("FDA") in September 2005. Almost one year later, in August 2006, a more complete version of

14   the meta-analysis was provided to the FDA. The results of GSK's analysis showed that patients

15   taking Avandia had a 31% higher risk of adverse cardiovascular events such as heart attack due to

16   obstruction of blood flow.

17       25.    GSK's Avandia can cause heart injury, excessive fluid retention, fluid-overload

18   disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac arrest

19   and death. Not only was GSK aware of the dangers posed by Avandia, but data from these studies

20   continued to be made available to GSK. On May 21, 2007, Dr. Steven E. Nissen, a prominent

21   cardiologist associated with the Cleveland Clinic, published a study in the New England Journal of

22   Medicine of his analysis of 42 studies comprising of approximately 28,000 people who took

23   Avandia. These were on-line databases of GSK studies that were available on the Internet. Dr.

6

COMPLAINT AND DAMAGES

Nissen's meta-analysis revealed a 43% higher risk of heart attack for those taking Avandia compared to people taking other diabetes drugs or no diabetes medication, and people taking Avandia suffered such adverse events at a rate of 1.99%, as opposed to 1.51% for other patients. Further, Dr. Nissen's analysis showed a 64% elevated risk of death from cardiovascular disease.

26.    Despite GSK's longstanding knowledge of these dangers, Avandia's label only warns about possible heart failure and other heart problems when taken with insulin.  GSK failed to adequately warn and disclose to consumers that Avandia significantly increased the risk of adverse cardiovascular events.  Furthermore, the proper and effective use of Avandia by Plaintiffs' decedents was impaired due to GSK's failure to adequately warn of Avandia's defects and GSK's failure to properly and adequately set forth such warnings in Avandia's drug labeling.

27.    GSK knew of these dangerous defects in Avandia from the many trials which it performed and to which it had access and from its own analysis of these studies, but took no action to adequately warn or remedy the defects, but instead concealed, suppressed and failed to disclose these dangers.  Even in the face of Dr. Nissen's study, GSK continues to fail to warn of these dangers through revised drug labeling.

28.    Not only has GSK failed to disclose in its labeling or advertising that Avandia is actually dangerous for diabetics, GSK has represented and has continued to represent that they manufacture and/or sell safe and dependable pharmaceuticals with safety as their first concern:

Like all innovative pharmaceutical companies, we carry out a series of clinical trials to test each investigational drug for the potential to become a new medicine.

***

Phase I trials typically involve health volunteers. *These trials study the safety of the drug and its interaction with the body*, for example, its concentration and duration in the blood following various doses, and begin to answer such questions as whether the drug inhibits or amplifies the effects of other medicines that might be taken at the same time.

7

Phase II studies enroll patients with the illness an investigational drug is designed to treat. These trials evaluate whether the drug shows favorable effects in treating an illness and seek to determine the proper dose. They provide an opportunity to explore the therapeutic potential of the drug in what may be quite different illnesses. *The evaluation of safety continues.*

If Phase II results have been encouraging, Phase III trials, the largest part of a clinical-development program, go forward. *Phase III trials are designed to provide the substantial evidence of efficacy and safety required*, in addition to data from earlier-phase trials, before regulatory agencies will approve the investigational drug as a medicine and allow it to be marketed.

http://www.gsk.com/research/clinical/index/html (emphasis supplied).

29.   GSK has also strongly touted their commitment to improving the quality of life: "We have a challenging and inspiring mission:  to improve the qualify of human life by enabling people to do more, feel better and live longer." http://www.gsk.com/about/index.htm.

30.   On May 21, 2007, the FDA issued a Safety Alert on Avandia showing that there is a potentially significant risk of heart attack and heart-related deaths in patients taking Avandia.

31.   Based on these representations, upon which both Plaintiffs' decedents and Plaintiffs' decedents' prescribing physicians relied, including the omission from the Avandia labeling of the danger of increased risk of adverse cardiovascular events as a result of ingesting Avandia, Plaintiffs' decedents purchased and ingested Avandia believing that the drug would be safe and effective.

32.   In fact, however, Avandia poses significant safety risks due to defects in its chemical design and inadequate labeling.

33.   To date, GSK has failed to adequately warn or inform consumers, such as Plaintiffs' decedents or Plaintiffs' decedents' prescribing physicians, of the known defects in Avandia that can lead to increased risks of cardiovascular events, including but not limited to heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest, and death.

8

COMPLAINT AND DAMAGES

34.     As a result of GSK's omissions and/or misrepresentations, Plaintiffs' decedents ingested Avandia, and have suffered heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac arrest and sustained physical and financial damages including pain and suffering.

**COUNT I**

**NEGLIGENCE**

(Against Defendants GSK and McKesson)

35.     Plaintiffs repeat and reiterate the allegations previously set forth herein.

36.     That at all times hereinafter mentioned, Defendants were under a duty to exercise reasonable care in the design manufacture, testing processing, marketing advertising, labeling, packaging distribution, and sale of Avandia, and Defendants knew or should have known that Avandia was not safe and that the user could sustain injuries and harm from the drug.

37.     That Defendants GSK and McKesson negligently, recklessly, grossly negligently, wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others in that they failed to exercise reasonable care and failed to fulfill the above-stated duty by the manner that Defendants, directly and indirectly, advertised, marketed and promoted Avandia for the treatment of diabetes, even though Avandia, in fact, was not reasonably safe for such use, and furthermore, Defendants failed to adequately warn of the increased risk of serious cardiovascular events which Defendants knew or should have known about.

38.     That Defendants GSK and McKesson negligently, recklessly, grossly negligently, wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others by manufacturing, distributing, selling, advertising, marketing and promoting Avandia even though such drug was not safe or effective for any purpose because it caused serious cardiovascular events

9

1  and by failing to adequately warn the trusting public and prescribing health care providers of the

2  true, complete, and accurate risk and the lack of efficacy of Avandia.

3  39.    The aforesaid incident and the injuries sustained by Plaintiffs' decedents were

4  caused by or were contributed to by the negligence, recklessness, gross negligence, wantonness,

5  willfulness, and conscious and callous disregard of the safety of the public, including Plaintiffs'

6  decedents, on the part of Defendants in the design, manufacture, distribution, advertising, marketing

7  and promoting of Avandia as being safe and effective in the treatment of diabetes, and by inducing

8  the public, including Plaintiffs' decedents and Plaintiffs' decedents' prescribing physicians, to

9  believe that Avandia was effective in the treatment of the causes and symptoms of diabetes.

10  40.    Defendants GSK and McKesson failed to exercise reasonable care in the design,

11  manufacture, testing, processing, marketing, advertising, labeling, packaging, rebranding,

12  distribution and/or sale of Avandia in one or more of the following respects:

13
14  a.  Designing, marketing, processing, advertising, packaging, distributing and/or selling a
15      product that defendants knew, or should have known, carried the risk of serious, life-
        threatening side effects;
16
17  b.  Failure to adequately test the product prior to placing the drug Avandia on the market;
18
19  c.  Failure to use care in designing, developing and manufacturing their product so as to
20      avoid posing unnecessary health risks to users of such product;
21
22  d.  Failure to conduct adequate pre-clinical testing and post-marketing surveillance to
23      determine the safety of Avandia;
24
25  e.  Failure to advise consumers, such as Plaintiffs, that consumption of Avandia could result
26      in severe and disabling side effects, including but not limited to heart injury, excessive
27      fluid retention, fluid-overload disease, liver damage, liver failure and severe injury to the
28      heart leading to cardiac arrest and death.
29
30  f.  Failure to advise the medical and scientific communities of the potential for severe and
31      disabling side effects, including but not limited to heart injury, excessive fluid retention,
32      fluid-overload disease, liver damage, liver failure, and severe injury to the heart leading
33      to cardiac arrest, and death.
34

10

COMPLAINT AND DAMAGES

g.  Failure to provide timely and/or adequate warnings about the potential health risks associated with the use of Avandia; and

h.  Any and all other acts of negligence with respect to Avandia which may be shown at trial.

41.    That at all times hereinafter mentioned, upon information and belief, the above-described culpable conduct by Defendants GSK and McKesson was a proximate cause of injuries sustained by Plaintiffs' decedents.

42.    That as a result of the aforesaid occurrence, the injuries sustained by Plaintiffs' decedents resulting therefrom, Plaintiffs' decedents suffered extensive monetary and pecuniary losses and other compensatory damages were also incurred and paid out including necessary medical, hospital, and concomitant expenses. In addition, Plaintiffs' decedents were deprived of a chance for safe and effective and/or successful treatment.

43.    By reason of the foregoing, Plaintiffs' decedents sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be determined upon the trial of this matter.

44.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENT FAILURE TO ADEQUATELY WARN
### (Against Defendants GSK and McKesson)

45.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

46.    At all relevant times, defendants GSK and McKesson researched, developed, designed, tested, manufactured, inspected, labeled, and/or distributed, marketed, promoted, sold,

11

1    and otherwise released into the stream of commerce the pharmaceutical, Avandia, and in the course

2    of same, directly advertised or marketed the product to FDA, consumers or persons responsible for

3    consumers, and therefore had a duty to warn of the risks associated with the use of Avandia.

4        47.    At all relevant times, Avandia was under the exclusive control of the Defendants as

5    aforesaid, and was unaccompanied by appropriate warnings regarding all possible adverse side

6    effects and complications associated with the use of Avandia, dangerous drug-drug interactions and

7    food-drug interactions, and the comparative severity, duration and the extent of the risk of injury

8    with such use.

9        48.    At all relevant times, defendants failed to timely and reasonably warn of material

10    facts regarding the safety and efficacy of Avandia so that no reasonable medical care provider

11    would have prescribed, or no consumer would have used, Avandia had those facts been made

12    known to such providers and consumers.

13        49.    At all relevant times, defendants failed to perform or otherwise facilitate adequate

14    testing in that such testing would have shown that Avandia posed serious and potentially life-

15    threatening side effects and complications with respect to which full and proper warning accurately

16    and fully reflecting the symptoms, scope and severity should have been made to medical care

17    providers, the FDA and the public, including Plaintiffs' decedents.

18        50.    At all relevant times, Avandia, which was researched, developed, designed, tested,

19    manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into

20    the stream of commerce by Defendants, was defective due to inadequate post-marketing warning

21    and/or instruction because, after Defendants knew or should have known of the risk of serious and

22    potentially life-threatening side effects and complications from the use of Avandia, Defendants

1  failed to provide adequate warnings to medical care providers, the FDA and the consuming public,

2  including Plaintiffs, and continued to promote Avandia aggressively.

3      51.    As a direct and proximate result of Defendants' carelessness and negligence, the

4  Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents

5  endured substantial pain and suffering and underwent extensive medical and surgical procedures.

6  Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs'

7  decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have

8  suffered economic loss, and have otherwise been physically, emotionally and economically injured.

9  The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs

10  seek actual and punitive damages from the Defendants as alleged herein.

11      52.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

12  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

13  relief as the Court deems proper.

**COUNT III**
**NEGLIGENCE *PER SE***
(Against Defendants GSK and McKesson)

18      53.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

19      54.    At all times mentioned herein, Defendants GSK and McKesson had an obligation not

20  to violate the law, in the manufacture, design, formulation, compounding, testing, production,

21  processing, assembling, inspection, research, distribution, marketing, labeling, packaging

22  preparation for use, sale and warning of the risks and dangers of the aforementioned product.

23      55.    At all times herein mentioned, Defendants violated the Federal Food, Drug and

24  Cosmetic Act, 21 U.S.C. Section 301 *et seq.*, related amendments and codes and federal regulations

25  provided thereunder, and other applicable laws, statutes and regulations.

13

56.    Plaintiffs' decedents, as purchasers and consumers of the product, are within the class of persons the statutes and regulations described above are designed to protect, and the injuries alleged herein are the type of harm these statutes are designed to prevent.

57.    Defendants' acts constitute an adulteration and/or misunderstanding as defined by the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 331, and constitutes a breach of duty subjecting Defendants to civil liability for all damages arising therefrom, under theories of negligence *per se.*

58.    Defendants failed to meet the standard of care set by the applicable statutes and regulations, which were intended for the benefit of individuals such as Plaintiffs' decedents, making Defendants negligent *per se*: (a) the labeling lacked adequate information on the use of the drug Avandia; (b) the labeling failed to provide adequate warnings of severe and disabling medical conditions as soon as there was reasonable evidence of their association with the drug; (c) there was inadequate information for patients for the safe and effective use of Defendants' drug; (d) there was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendants' drug; and (e) the labeling was misleading and promotional.

59.    As a direct and proximate result of Defendants' carelessness and negligence, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

60.     WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
(Against Defendants GSK and McKesson)

61.     Plaintiffs repeat and reiterate the allegations previously set forth herein.

62.     Defendants GSK and McKesson, in addition to knowing misrepresentations, made misrepresentations without any reasonable grounds for believing its statements to be true to Plaintiffs' decedents, other patients, and the medical community.

63.     Defendants GSK and McKesson, through their misrepresentations, intended to induce justifiable reliance by Plaintiffs' decedents, other patients, and the medical community.

64.     Defendants GSK and McKesson, through their marketing campaign and communications with treating physicians, were in a relationship so close to that of Plaintiffs' decedents and other patients that it approaches and resembles privity.

65.     Defendants GSK and McKesson owed a duty to the medical community, Plaintiffs' decedents, and other consumers, to conduct appropriate and adequate studies and tests for all products, including Avandia, and to provide appropriate and adequate information and warnings.

66.     Defendants failed to conduct appropriate or adequate studies for Avandia.

67.     Defendants failed to exercise reasonable care by failing to conduct studies and tests of Avandia.

68.     As a direct and proximate result of Defendants' carelessness and negligence, the Plaintiffs' decedents suffered severe and permanent physical injuries.  The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures.

15

1    Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs'

2    decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have

3    suffered economic loss, and have otherwise been physically, emotionally and economically injured.

4    The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs

5    seek actual and punitive damages from the Defendants as alleged herein.

6         69.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

7    treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

8    relief as the Court deems proper.

**COUNT V**
**BREACH OF EXPRESS WARRANTY**
(Against Defendants GSK and McKesson)

13         70.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

14         71.    Defendants GSK and McKesson expressly represented to Plaintiffs' decedents and

15    other consumers and the medical community that Avandia was safe and fit for its intended

16    purposes, that is was of merchantable quality, that it did not produce any dangerous side effects, and

17    that it was adequately tested.

18         72.    Avandia does not conform to Defendants' express representations because it is not

19    safe, has numerous and serious side effects, and causes severe and permanent injuries.

20         73.    At all relevant times Avandia did not perform as safely as an ordinary consumer

21    would expect, when used as intended or in a reasonably foreseeable manner.

22         74.    Plaintiffs' decedents, other consumers, and the medical community relied upon

23    Defendants' express warranties.

24         75.    As a direct and proximate result of Defendants' breach of express warranty, the

25    Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents

16

COMPLAINT AND DAMAGES

endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

76.    Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiffs' decedents, thereby entitling Plaintiffs to punitive damages so as to punish them and deter it from similar conduct in the future.

77.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI
## BREACH OF IMPLIED WARRANTY
(Against Defendants GSK and McKesson)

78.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

79.    The Defendants GSK and McKesson marketed, distributed, supplied and sold the subject product for the treatment of diabetes.

80.    At the time that the Defendants GSK and McKesson marketed, distributed, supplied, and sold Avandia, they knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use.

81.    The Plaintiffs' decedents, individually and through prescribing physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

17

82.    The Plaintiffs' decedents were prescribed, purchased, and used the subject product for its intended purpose.

83.    Due to Defendants' wrongful conduct as alleged herein, the Plaintiffs' decedents could not have known about the nature of the risks and side effects associated with the subject product until after use.

84.    Contrary to the implied warranty for the subject product, Avandia was not of merchantable quality, and was not safe or fit for its intended uses and purposes as alleged herein.

85.    As a direct and proximate result of Defendants' breach of implied warranty, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

86.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VII
## STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN
(Against Defendants GSK and McKesson)

87.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

88.     At all times material to this action, the Defendants were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

89.     The subject product is defective and unreasonably dangerous to consumers.

90.     Avandia is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

91.     At all times material to this action, Avandia was expected to reach, and did reach, consumers in this jurisdiction and through the United States, including the Plaintiffs' decedents herein, without substantial change in the condition in which it was sold.

92.     At all times material to this action, Avandia was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a.  When placed in the stream of commerce, Avandia contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting the Plaintiffs' decedents to risks that exceeded the benefits of the subject product, including but not limited to the risks of developing heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects in an unacceptably high number of its users;

b.  When placed in the stream of commerce, Avandia was defective in design and formulation, making the use of Avandia more dangerous than an ordinary consumer would expect,

1  and more dangerous than other risks associated with the other medications and similar drugs on the

2  market for the treatment of diabetes;

3      c.  The subject product's design defects existed before it left the control of the Defendants;

4      d.  Avandia was insufficiently tested;

5      e.  Avandia caused harmful side effects that outweighed any potential utility; and

6      f.  Avandia was not accompanied by adequate instructions and/or warnings to fully apprise

7  consumers, including the Plaintiffs' decedents herein, of the full nature and extent of the risks and

8  side effects associated with its use, thereby rendering Defendants liable to Plaintiffs, individually

9  and collectively.

10     93.    In addition, at the time the subject product left the control of the Defendants, there

11 were practical and feasible alternative designs that would have prevented and/or significantly

12 reduced the risk of Plaintiffs' decedents' injuries without impairing the reasonably anticipated or

13 intended function of the product.   These safer alternative designs were economically and

14 technologically feasible, and would have prevented or significantly reduced the risk of Plaintiffs'

15 decedents' injuries without substantially impairing the product's utility.

16     94.    As a direct and proximate result of the subject product's defective design, the

17 Plaintiffs' decedents suffered severe and permanent physical injuries.   The Plaintiffs' decedents

18 endured substantial pain and suffering and underwent extensive medical and surgical procedures.

19 Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs'

20 decedents have lost past earnings and have suffered a loss of earning capacity.   The Plaintiffs have

21 suffered economic loss, and have otherwise been physically, emotionally and economically injured.

22 The Plaintiffs' injuries and damages are permanent and will continue into the future.   The Plaintiffs

23 seek actual and punitive damages from the Defendants as alleged herein.

COMPLAINT AND DAMAGES

95.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VIII
## STRICT PRODUCTS LIABILITY – MANUFACTURING AND DESIGN DEFECT
(Against Defendants GSK and McKesson)

96.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

97.    At all times material to this action, Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

98.    At all times material to this action, Avandia was expected to reach, and did reach, consumers in this jurisdiction and throughout the United States, including the Plaintiffs herein without substantial change in the condition in which it was sold.

99.    At all times material to this action, Avandia was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a.  When placed in the stream of commerce, Avandia contained manufacturing defects which rendered the product unreasonably dangerous;

b.  The subject product's manufacturing defects occurred while the product was in the possession and control of the Defendants;

c.  The subject product was not made in accordance with the Defendants' specifications and performance standards;

21

COMPLAINT AND DAMAGES

d. The subject product's manufacturing defects existed before it left the control of the Defendants;

100. As a direct and proximate result of the subject product's manufacturing defects, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

101. WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IX
## STRICT PRODUCTS LIABILITY – FAILURE TO ADEQUATELY WARN
### (Against Defendants GSK and McKesson)

102. Plaintiffs repeat and reiterate the allegations previously set forth herein.

103. Avandia was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert consumers, including the Plaintiffs' decedents herein, of the dangerous risks and reactions associated with the subject product, including but not limited to its propensity to cause heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects over other forms of diabetes treatment.

104.    The Plaintiffs' decedents were prescribed and used the subject product for its intended purpose.

105.    The Plaintiffs' decedents could not have discovered any defect in the subject product through the exercise of reasonable care.

106.    The Defendants GSK and McKesson, as manufacturers and/or distributors of the subject prescription product, are held to the level of knowledge of an expert in the field.

107.    The warnings that were given by the Defendants GSK and McKesson were not accurate, clear and/or were ambiguous.

108.    The warnings that were given by the Defendants GSK and McKesson failed to properly warn physicians of the increased risks of heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects.

109.    The warnings that were given by the Defendants GSK and McKesson failed to properly warn consumers of the increased risks of heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects.

110.    The Plaintiffs' decedents, individually and through prescribing physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

111.    The Defendants GSK and McKesson had a continuing duty to adequately warn the Plaintiffs' decedents of the dangers associated with the subject product and of the poor efficacy of the product.

112.   Had the Plaintiffs' decedents and/or Plaintiffs' decedents' prescribing physicians received adequate warnings regarding the risks, and the lack of benefits, of the subject product, Plaintiffs' decedents would not have used it.

113.   As a proximate result of the subject product's manufacturing defects, the Plaintiffs' decedents suffered severe and permanent physical injuries.  The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures.  Plaintiffs' decedents incurred significant expenses for medical care and treatment.  Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity.  The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured.  The Plaintiffs' injuries and damages are permanent and will continue into the future.  The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

114.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT X
### FRAUDULENT MISREPRESENTATION
(Against Defendants GSK and McKesson)

115.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

116.   Defendants GSK and McKesson widely advertised and promoted Avandia as a safe and effective medication both in direct-to-consumer marketing and in fraudulent promotion to the health care providers including Plaintiffs' decedents prescribing physicians.

117.   Defendants GSK and McKesson had a duty to disclose material information about serious side effects to consumers such as Plaintiffs.  Additionally by virtue of Defendants' partial disclosures about the medication, in which Defendants touted Avandia as safe and effective

24

1  treatment, Defendants had a duty to disclose all facts about the risks of use associated with the

2  medication, including the potential for the medication to cause heart injury, excessive fluid

3  retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart

4  leading to cardiac arrest, and death. Defendants intentionally failed to adequately disclose this

5  information for the purpose of inducing consumers, such as Plaintiffs' decedents, to purchase

6  Defendants' dangerous product.

7       118.  Had Plaintiffs been aware of the hazards associated with Avandia, Plaintiffs'

8  decedents would not have consumed the product that lead proximately to Plaintiffs' decedents'

9  adverse health effects.

10      119.  Defendants' advertisements regarding Avandia made material misrepresentations to

11  the effect that Avandia was a safe and effective treatment, which misrepresentations Defendant

12  knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiffs' decedents,

13  to purchase such product. Plaintiffs' decedents relied in part on these material misrepresentations in

14  deciding to purchase and consume Avandia to their detriment.

15      120.  The damages sustained by Plaintiffs' decedents were a direct and foreseeable result

16  of, and were proximately caused by Defendants' misrepresentations, concealment and omissions.

17      121.  Defendants' conduct was willful, wanton, and reckless. Based on the intentionally

18  dishonest nature of Defendants' conduct, which was directed at Plaintiffs' decedents and the public

19  generally, Defendants should also be held liable for punitive damages.

20      122.  Any applicable statutes of limitation have been tolled by Defendants' knowing and

21  active concealment and denial of the facts alleged herein. Plaintiffs' decedents and other members

22  of the public who were prescribed and who ingested Avandia for the treatment of diabetes have

23  been kept in ignorance of vital information essential to the pursuit of these claims, without any fault

25

COMPLAINT AND DAMAGES

1  or lack of diligence on their part, and could not reasonably have discovered the fraudulent nature of

2  Defendants' conduct, and information and documents concerning the safety and efficacy of

3  Avandia.  Furthermore, due to the aforesaid allegations, Plaintiffs' decedents may rely on the

4  discovery rule in pursuit of this claim.

5       123.   By reason of the foregoing, Plaintiffs' decedents sustained damages in a sum which

6  exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and

7  in addition thereto, Plaintiffs seek punitive and exemplary damages against Defendants in an

8  amount to be determined upon the trial of this matter.

9       124.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

10  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

11  relief as the Court deems proper.

## COUNT XI
## VIOLATIONS OF CALIFORNIA UNFAIR TRADE PRACTICES AND CONSUMER
## PROTECTION LAW
### (Against Defendants GSK and McKesson)

17       125.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

18       126.   Defendants have engaged in unfair competition or unfair or deceptive acts or

19  practices in violation of Cal. Bus. & Prof. Code § 17200, et seq. and the Consumer Legal Remedies

20  Act, Civ. Code § 1750 et seq. ("CLRA")

21       127.   Defendants GSK and McKesson acted, used and employed deception, unfair and

22  deceptive acts and practices, fraud, false promises, misrepresentations, concealment, suppression

23  and omission of material facts with intent that physicians and medical providers rely upon such

24  concealment, suppression and omission, and for the purpose of influencing and inducing physicians

25  and medical providers to prescribe Avandia, for the treatment of diabetes to patients/consumers

26  such as Plaintiffs' decedents, and causing such patients/consumers to purchase, acquire and use

1 Avandia for the treatment of diabetes, as prescribed by their physicians and medical providers, in

2 connection with the sale and advertisement of the drug Avandia, in violation of California law.

3       128.   By reason of Defendants' acts, uses and employment of deception, unfair and

4 deceptive acts and practices, fraud, false promises, misrepresentations, concealment, suppression

5 and omission of material facts, reasonable patients/consumers acting reasonably, such as Plaintiffs'

6 decedents, were caused to purchase and ingest Avandia, and thereby sustain serious personal

7 injuries.

8       129.   By reason of the foregoing, Plaintiffs sustained damages in a sum which exceeds the

9 jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition

10 thereto, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be

11 determined upon the trial of this matter.

12
13 **COUNT XII**
**UNJUST ENRICHMENT**
(Against Defendants GSK and McKesson)
14
15
16       130.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

17       131.   To the detriment of Plaintiffs' decedents the Defendants GSK and McKesson have

18 been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of,

19 inter alia, payments for Avandia.

20       132.   Plaintiffs' decedents were injured by the cumulative and indivisible nature of the

21 Defendants' conduct. The cumulative effect of the Defendants' conduct directed at physicians and

22 consumers was to artificially create a demand for Avandia at an artificially inflated price. Each

23 aspect of the Defendants' conduct combined to artificially create sales of Avandia.

133. The Defendants GSK and McKesson have unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Avandia and continue to so benefit to the detriment and at the expense of Plaintiffs.

134. Accordingly, Plaintiffs seek full disgorgement and restitution of the Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

135. WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XIII
## WRONGFUL DEATH
### (Against Defendants GSK and McKesson)

136. Plaintiffs repeat and reiterate the allegations previously set forth herein.

137. As a result of the acts and/or omissions of the Defendants as set forth herein, Plaintiffs' decedents suffered serious emotional and bodily injuries resulting in death.

138. Plaintiff Deborah Citrano Johnson, as designated personal representative of Stephen Citrano, is entitled to recover damages as decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled, herein pursuant to Cal. Code Civ. Proc. § 377.60.

139. Plaintiff Rose Hefner, as decedent's surviving spouse, is entitled to recover damages as decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled, herein pursuant to Cal. Code Civ. Proc. § 377.60.

140.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XIV
## SURVIVAL ACTION
(Against Defendants GSK and McKesson)

141.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

142.    As a result of the actions and inactions of the Defendants, Plaintiffs' decedents were caused harm and suffering before their death.

143.    Plaintiffs in their own right and as personal representatives of the decedents' estates seek damages compensable under Cal. Code Civ. Proc. § 377.30.

144.    Plaintiffs are potential beneficiaries of this action as surviving heirs, making them the decedents' successors in interest under Cal. Code Civ. Proc. § 377.30.

145.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XV
## LOSS OF CONSORTIUM
(Against Defendants GSK and McKesson)

146.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

147.    In cases where Plaintiffs' decedents were married at the time of their respective injuries, the spouses of such Plaintiffs were entitled to their comfort, care, affection, companionship, services, society, advice, guidance, counsel, and consortium.

148.    As a direct and proximate result of one or more of those wrongful acts or omissions of the Defendants described above, Plaintiffs' decedents' spouses have been and will be deprived of

29

their comfort, care, affection, companionship, services, society, advice, guidance, counsel and consortium.

149.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT XVI**
**PUNITIVE DAMAGES**
(Against Defendants GSK and McKesson)

150.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

151.    At all times material hereto, the Defendants GSK and McKesson knew or should have known that the subject product was inherently more dangerous with respect to the risks of heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac arrest, and death than alternative treatments for diabetes.

152.    At all times material hereto, the Defendants GSK and McKesson attempted to misrepresent and did misrepresent facts concerning the safety of the subject product.

153.    Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including the Plaintiffs' decedents herein, concerning the safety of the subject product.

154.    At all times material hereto, the Defendants GSK and McKesson knew and recklessly disregarded the fact that Avandia causes debilitating and potentially lethal side effects with greater frequency than safer alternative methods of treatment for diabetes.

155.    Notwithstanding the foregoing, the Defendants GSK and McKesson continued to aggressively market the subject product to consumers, including the Plaintiffs' decedents herein,

30

COMPLAINT AND DAMAGES

1  without disclosing the aforesaid side effects when there were safer alternative methods of treatment

2  for diabetes.

3      156.  The Defendants GSK and McKesson knew of the subject product's defective and

4  unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture,

5  market, distribute and sell it so as to maximize sales and profits at the expense of the health and

6  safety of the public, including the Plaintiffs' decedents herein, in conscious and/or negligent

7  disregard of the foreseeable harm caused by Avandia.

8      157.  Defendants GSK and McKesson intentionally concealed and/or recklessly failed to

9  disclose to the public, including the Plaintiffs' decedents herein, the potentially life threatening side

10  effects of Avandia in order to ensure continued and increased sales.

11      158.  The Defendants' intentional and/or reckless failure to disclose information deprived

12  the Plaintiffs' decedents of necessary information to enable Plaintiffs' decedents to weigh the true

13  risks of using the subject product against its benefits.

14      159.  As a direct and proximate result of the Defendants' conscious and deliberate

15  disregard for the rights and safety of consumers such as the Plaintiffs, the Plaintiffs' decedents

16  suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain

17  and suffering and underwent extensive medical and surgical procedures.  Plaintiffs' decedents

18  incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past

19  earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss,

20  and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries

21  and damages are permanent and will continue into the future.  The Plaintiffs seek actual and

22  punitive damages from the Defendants as alleged herein.

31

160.    The aforesaid conduct of Defendants GSK and McKesson was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including the Plaintiffs' decedents herein, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

161.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against Defendants as follows:

(1)    Judgment for Plaintiffs and against defendants;

(2)    Damages in the form of compensatory damages in excess of the jurisdictional limits, trebled on all applicable counts;

(3)    Physical pain and suffering of the Plaintiffs

(4)    Pre and post judgment interest at the lawful rate;

(5)    Reasonably attorneys' fees and costs and expert fees;

(6)    A trial by jury on all issues of the case;

(7)    For any other relief as this court may deem equitable and just;

(8)    Restitution of all purchase costs that Plaintiffs paid for Avandia disgorgement of Defendants' profits, and such other relief as provided by law;

(9)    Exemplary and punitive damages in an amount in excess of the jurisdictional limits, trebled on all applicable counts;

(10)    All Bill of Costs elements; and

(11)    Such other relief this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable in this action.

32

1
2
3
4
5
6
7
8
9
10
11
12
13

Dated: November 26, 2007         Respectfully submitted,

*David C. Andersen*

David C. Andersen (Bar No. 194095)
THE MILLER FIRM, LLC
Attorneys for Plaintiffs
108 Railroad Avenue
Orange, VA 22960
Phone: (540) 672-4224
Fax: (540) 672-3055
Email:dandersen@doctoratlaw.com

33

COMPLAINT AND DAMAGES

# EXHIBIT

# B

**MDL 1871**

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

7:23 am, Oct 16, 2007

FILED
CLERK'S OFFICE

# UNITED STATES JUDICIAL PANEL
on
## MULTIDISTRICT LITIGATION

IN RE: AVANDIA MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

| | | |
|---|---|---|
| Sharon Ann Dabon v. GlaxoSmithKline, Inc., | ) | |
| E.D. Louisiana, C.A. No. 2:07-3041 | ) | MDL No. 1871 |
| Celenio Cruz-Santana v. GlaxoSmithKline, PLC, et al., | ) | |
| D. Puerto Rico, C.A. No. 3:07-1461 | ) | |

### TRANSFER ORDER

**Before the entire Panel[*]:** Plaintiff in the action pending in the Eastern District of Louisiana, has moved, pursuant to 28 U.S.C. § 1407, to centralize this litigation in the District of Puerto Rico or, alternatively, in the Eastern District of Louisiana. This litigation currently consists of moving plaintiff's action and one action pending in the District of Puerto Rico.[1] Plaintiff in the latter action supports centralization in the District of Puerto Rico. Plaintiffs in potential tag-along actions pending in the Central District of California, the Southern District of Florida, the District of New Jersey, the Southern District of New York, and the District of Puerto Rico have submitted responses in support of centralization. These plaintiffs suggest a variety of fora for transferee district, including the Southern District of Florida (favored by plaintiffs in the action pending in that district), the District of New Jersey (favored by plaintiff in the action pending in that district, as well as plaintiff in the Central District of California action), the Southern District of New York (favored by plaintiffs in eight actions pending in that district), and the District of Puerto Rico (favored by plaintiffs in the action pending in that district). Responding defendant SmithKlineBeecham Corp. d/b/a GlaxoSmithKline (GSK) initially opposed the Section 1407 motion, but now supports centralization in the Eastern District of Pennsylvania.

---

[*]     Judge Heyburn took no part in the disposition of this matter.

[1]     The Panel has been notified of 28 additional related actions pending in the Western District of Arkansas, the Central District of California (two actions), the Southern District of Florida (two actions), the Southern District of Illinois, the Southern District of Indiana, the Eastern District of Louisiana, the District of New Jersey, the Eastern District of New York, the Southern District of New York (ten actions), the Northern District of Ohio, the Eastern District of Oklahoma, the Eastern District of Pennsylvania, the District of Puerto Rico, the Eastern District of Tennessee, the Western District of Tennessee, and the Eastern District of Texas (two actions). These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

## OFFICIAL FILE COPY

IMAGED OCT 1 6 2007

PLEADING NO. 22

- 2 -

On the basis of the papers filed and hearing session held, we find that these actions involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Pennsylvania will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Both actions arise from allegations that certain diabetes drugs manufactured by GSK – Avandia and/or two sister drugs containing Avandia (Avandamet and Avandaryl) – cause an increased risk of heart attack and other physical injury, and that GSK failed to provide adequate warnings concerning that risk. Centralization under Section 1407 will eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

We are also persuaded that the Eastern District of Pennsylvania is an appropriate transferee district for pretrial proceedings in this litigation. GSK's principal place of business is located in that district, and thus many witnesses and documents relevant to the litigation are likely to be found there. In addition, one of the potential tag-along actions was commenced in the Eastern District of Pennsylvania.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the two actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Cynthia M. Rufe for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

D. Lowell Jensen
Acting Chairman

John G. Heyburn II, Chairman*       J. Frederick Motz
Robert L. Miller, Jr.                Kathryn H. Vratil
David R. Hansen                      Anthony J. Scirica

# EXHIBIT

# C

1  DONALD F. ZIMMER, JR. (State Bar No. 112279)
2  KRISTA L. COSNER (State Bar No. 213338)
   DRINKER BIDDLE & REATH LLP
3  50 Fremont Street, 20th Floor
   San Francisco, California 94105
   Telephone: (415) 591-7500
4  Facsimile: (415) 591-7510

5  Attorneys for Defendants
   SMITHKLINE BEECHAM CORPORATION dba
6  GLAXOSMITHKLINE and McKESSON
   CORPORATION
7

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12  DOROTHY BONE; DAVID COOK;          Case No.
    JESUS COTA; JO ELLEN GARNER;
13  BARRON GATTA; CATHY GRAY;          DECLARATION OF GREG YONKO IN
    FRANKLIN JENKINS; GREGORY          SUPPORT OF NOTICE OF REMOVAL
14  RODRIGUEZ; ROBERT RODRIGUEZ;       AND REMOVAL ACTION, UNDER 28
    ROGER TAVARES; LAVIOLA             U.S.C. § 1441(B) (DIVERSITY) and 28
15  TOWNSEND,                          U.S.C. § 1441(C) (FEDERAL
                                       QUESTION) OF DEFENDANT
16                    Plaintiffs,      SMITHKLINE BEECHAM
                                       CORPORATION dba
17       v.                            GLAXOSMITHKLINE

18  SMITHKLINE BEECHAM
    CORPORATION dba
19  GLAXOSMITHKLINE and McKESSON
    CORPORATION,
20
                      Defendants.
21

22       I, GREG YONKO, declare:

23       1.    I am Senior Vice President - Purchasing for McKesson Corporation

24  ("McKesson"), and make this declaration in support of the Notice of Removal and

25  Removal Action of defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline

26  ("GSK") based on my personal knowledge.

27       2.    I have been in my current position since 1997, and have been employed by

28  McKesson for over 25 years. As Vice President of Purchasing, I am responsible for

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1  purchasing prescription and non-prescription branded product management and

2  investment purchasing.

3      3.    McKesson was and is a Delaware corporation, with its principal place of

4  business in San Francisco, California.

5      4.    McKesson was served with the Summons and Complaint in this action on

6  October 24, 2007.

7      5.    McKesson consents to the removal of this action.

8      6.    McKesson is a wholesale distributor of pharmaceuticals, over-the-counter

9  and health and beauty products to chains, independent pharmacy customers and hospitals.

10  As a wholesale distributor, McKesson distributes products manufactured by others. As to

11  Avandia®, McKesson does not manufacture, produce, process, test, encapsulate, label, or

12  package, these products, nor does it make any representations or warranties as to the

13  product's safety or efficacy.

14      7.    McKesson distributed Avandia®, manufactured by GSK, along with many

15  other products of other pharmaceutical companies, to certain drug stores, pharmacies,

16  health care facilities and hospitals throughout the United States. As stated above,

17  McKesson did not manufacture, produce, process, test, encapsulate, label, or package

18  Avandia®, but only delivered the unopened boxes that contained the drug.

19      8.    McKesson is one of many suppliers who could have supplied Avandia® to

20  the numerous pharmacies throughout the United States.

21      I declare under penalty of perjury under the laws of the State of California that the

22  foregoing is true and correct, and this declaration was executed on November 16, 2007 in

23  San Francisco, California.

24

25                                    GREG YONKO

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\391730\1

2