

___ Priority
✓ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BLACK, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCK & COMPANY, INC., a corporation; MCKESSON CORPORATION, a corporation; and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO. CV 03-8730 NM (AJWx)<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |

## I. INTRODUCTION

On November 25, 2003, 35 plaintiffs residing in 20 states, including California but not including New Jersey ("Plaintiffs"), sued Merck & Company, Inc. ("Merck"), McKesson Corporation ("McKesson"), and Does 1-100, inclusive (collectively, "Defendants"), in Los Angeles Superior Court.[1] Thirty-two of the Plaintiffs allege they were injured by taking VIOXX, a prescription drug; the

---

[1] Local Rule 19-1 provides that "[n]o complaint or petition shall be filed that includes more than ten (10) Doe or fictitiously named parties."

EXHIBIT 5

remaining three plaintiffs allege loss of consortium. Compl. ¶¶ 13-47.[2]

On December 1, 2003, Merck removed the case based on diversity. Merck is incorporated in and has its principal place of business in New Jersey. Id. ¶ 49. McKesson is incorporated in Delaware and has its principal place of business in California. Notice of Removal ¶ 12; Mot. at 1. Merck asserts that diversity jurisdiction exists because the only non-diverse defendant named in the Complaint, McKesson, was fraudulently joined. Notice of Removal ¶ 8; Mot. at 1. In the alternative, Merck argues the court should extend the doctrine of fraudulent joinder to apply where plaintiffs were misjoined. Mot. at 11-12. Merck contends that because the four California plaintiffs were misjoined, the court should disregard their citizenship and sever them from the case. Id. Now pending is Plaintiffs' Motion to Remand on the grounds that: (1) diversity jurisdiction is lacking, and (2) Merck's request to sever the California plaintiffs is contrary to law and to standards of efficiency.

## II. FACTS

Merck, a pharmaceutical company, tested, manufactured, marketed, labeled, and distributed VIOXX. Compl. ¶¶ 48-49. Merck sells VIOXX to wholesale distributors, hospitals, pharmacies, and other suppliers of prescription drugs. Layton Decl. ¶¶ 2-3. McKesson, a wholesale distributor, promoted and distributed VIOXX. Id. ¶ 3; Compl. ¶ 50. Currently, Merck sells VIOXX to approximately 33 wholesalers (including McKesson), 1,000 hospitals, 1,500 small pharmacies,

---

[2] Plaintiffs allege thirteen claims: (1) strict liability for failure to warn; (2) negligence; (3) negligence per se; (4) breach of implied warranty; (5) breach of express warranty; (6) deceit by concealment; (7) negligent misrepresentation; (8) violation of Cal. Bus. & Prof. Code § 17200; (9) violation of Cal. Bus. & Prof. Code § 17500; (10) violation of Cal. Civ. Code § 1750; (11) wrongful death; (12) survival action; and (13) loss of consortium.

EXHIBIT 5

1  and three warehouse chain pharmacies. Layton Decl. ¶ 3.

2       VIOXX is a prescription drug used for the treatment of painful menstrual
3  cramps, the management of acute pain in adults, and the relief of signs and
4  symptoms of osteoarthritis. Compl. ¶ 55. VIOXX has allegedly been linked to
5  several severe and life threatening medical disorders including, but not limited to,
6  edema, changes in blood pressure, heart attacks, strokes, seizures, kidney and liver
7  damage, pregnancy complications, and death. Id. ¶ 58. Plaintiffs allege these
8  risks were not disclosed to them. Id. Plaintiffs further allege Defendants
9  aggressively marketed their product through advertisements and other promotional
10 materials while misleading potential users and failing to protect consumers from
11 serious dangers of which Defendants knew or should have known. Id. ¶¶ 59-64.

### III. DISCUSSION
#### A. Fraudulent Joinder

For removal based on diversity, 28 U.S.C. § 1332 requires complete diversity of citizenship. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (citation omitted). Even if the complete diversity requirement is met, removal is not allowed where one of the defendants is a "citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).[3] But if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) (citation omitted). "Fraudulent joinder" is a term of art and does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive. Id.; DaCosta v. Novartis AG, 180 F. Supp. 2d 1178, 1181 (D. Or. 2001) (citation

---

[3] A corporation is deemed a citizen of its state of incorporation and its principal place of business. See 28 U.S.C. § 1332(c)(1).

3

EXHIBIT 5

omitted). Where joinder of a non-diverse defendant is deemed fraudulent, the defendant's presence in the lawsuit is ignored for purposes of determining diversity. Morris, 236 F.3d at 1067.

"There is a presumption against finding fraudulent joinder, and defendants who assert that [the] plaintiff has fraudulently joined a party carry a heavy burden of persuasion." Plute v. Roadway Package Sys., Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (citations omitted); see also, Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n. 3 (9th Cir. 1990) ("removal statute is strictly construed against removal jurisdiction"); Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) (same). Courts have denied claims of fraudulent joinder when there is any possibility that a plaintiff may prevail on the cause of action against the in-state defendant. Plute, 141 F. Supp. 2d at 1008, 1012; see Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995) ("The burden of proving a fraudulent joinder is a heavy one. The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.") (citation and internal quotations omitted). "In determining whether a defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.'" Plute, 141 F. Supp. 2d at 1008 (quoting Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42-43 (5th Cir. 1992)); Little v. Purdue Pharma, LP, 227 F. Supp. 2d 838, 849 (S.D. Ohio 2002) ("a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts").

Furthermore, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand; a lack of clear precedent does not render the joinder fraudulent. Plute, 141 F. Supp. 2d at 1008 (citation omitted); see Peloza v. Capistrano Unified Sch.

EXHIBIT 5

1 Dist., 37 F.3d 517, 521 (9th Cir. 1994) (courts must interpret general allegations to
2 "embrace whatever specific facts might be necessary to support them"); Little, 227
3 F. Supp. 2d at 847 n. 12 ("in light of the heavy burden on defendants to show the
4 non-diverse defendants were fraudulently joined, it seems to this Court that a
5 finding of fraudulent joiner should not be based on factual deficiencies within the
6 pleadings which are correctable by amendment").

7     Merck contends that McKesson was fraudulently joined on two grounds:
8 (1) Plaintiffs have failed to allege an actual connection between their purported
9 injuries and McKesson's conduct, and (2) Plaintiffs have failed to state a viable
10 claim against McKesson. With respect to the first ground, Merck argues Plaintiffs
11 must allege the VIOXX they ingested was distributed by McKesson to the
12 pharmacies from which Plaintiffs purchased VIOXX. Opp. at 5-6. Merck argues
13 that McKesson is one of numerous distributors and Plaintiffs have failed to plead
14 that McKesson received a benefit from the sale of the product, that its role was
15 integral to the business of the manufacturer, or that McKesson had control over or
16 ability to influence the manufacturing or distribution process. Id. at 7.

17     Plaintiffs, however, allege McKesson "was in the business of promoting and
18 distributing the pharmaceutical Vioxx." Compl. ¶ 50. Plaintiffs also allege they
19 have "been prescribed and supplied with, received, and [have] taken and ingested
20 and consumed the prescription drug Vioxx, as . . . distributed, marketed, labeled,
21 promoted, packaged . . . or otherwise placed in the stream of interstate commerce
22 by Defendants Merck & Company, Inc., McKesson, and Defendants Does 1
23 through 100." Id. ¶ 1.[4]

---

[4] Most of the remaining allegations are against "Defendants," including McKesson. General allegations against "Defendants" are sufficient to charge McKesson with the alleged wrongful conduct. See Plute, 141 F. Supp. 2d at 1007, 1010 n. 4 (any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous, or technically defective pleading must be resolved in favor of remand); Peloza, 37 F.3d at

5

EXHIBIT 5

Next, Merck contends Plaintiffs have failed to state a viable claim against McKesson. Plaintiffs argue they have stated a claim against McKesson for strict liability for failure to warn. Under California law, manufacturers can be held strictly liable for failure to warn. Brown v. Superior Court, 44 Cal. 3d 1049, 1065 (1988). Generally, such liability extends beyond manufacturers to retailers and wholesalers. Johnson v. Standard Brands Paint Co., 274 Cal. App. 2d 331, 337 (1969); Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 560 (1994). A retailer includes anyone involved in the sale of a product short of "the housewife who, on occasion, sells to her neighbor a jar of jam or a pound of sugar." Pan-Alaska Fisheries, Inc. v. Marine Constr. & Design Co., 565 F.2d 1129, 1135 (9th Cir. 1977) (citations omitted).

In contrast to manufacturers of prescription drugs who are subject to strict liability for failure to warn, pharmacists cannot be held strictly liable for failure to warn. See Murphy v. E. R. Squibb & Sons, Inc., 40 Cal. 3d 672, 679 (1985); Carlin v. Superior Court, 13 Cal. 4th 1104, 1117 (1996). "Courts have traditionally maintained a distinction between those rendering services and those selling products, holding that those providing services are not subject to strict liability[.]" San Diego Hosp. Ass'n v. Superior Court, 30 Cal. App. 4th 8, 13 (1994). As the California Supreme Court has explained: "A key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor.... [H]e is providing a service to the doctor." Murphy, 40 Cal. 3d at 679.

Although California case law has carved out an exception for service providers such as pharmacists, it has not addressed whether distributors of prescription drugs can be strictly liable for failure to warn. Because state law is

---

521 (courts must interpret general allegations to "embrace whatever specific facts might be necessary to support them").

6

EXHIBIT 5

unsettled as to whether a distributor of prescription drugs could be strictly liable for failure to warn, the court cannot rule that there is "absolutely no possibility" Plaintiffs could prevail on this claim against McKesson. See Plute, 141 F. Supp. 2d at 1008, 1012; Cavallini, 44 F.3d at 259. Thus, Merck has not met its "heavy burden" of demonstrating that a non-diverse defendant was fraudulently joined. See Plute, 141 F. Supp. 2d at 1012; Little, 227 F. Supp. 2d at 849.

Merck argues the rationale for exempting pharmacists from strict liability applies equally to distributors. Citing case law from Pennsylvania, Maryland, and Mississippi, Merck contends courts have not held pharmacists strictly liable because to do so would interfere with the doctor-patient relationship. Obviously, McKesson is not a pharmacist, and there is no potential for interference with any doctor-patient relationship. Moreover, the California Supreme Court has distinguished pharmacists from others in the chain of distribution on the ground that pharmacists provide services. See Murphy, 40 Cal. 3d at 679. Unlike a pharmacist, McKesson provides no service.

Next, Merck argues that under the "learned intermediary" doctrine, distributors have no duty to warn and thus cannot be held strictly liable, citing two unpublished district court cases where the court concluded that a distributor of a prescription drug is not subject to liability. See Barlow v. Warner-Lambert Co., CV 03-1647-R, slip op. at 2 (C.D. Cal. 2003); Skinner v. Warner-Lambert Co., CV 03-1643-R, slip op. at 2 (C.D. Cal. 2003).[5] However, both cases relied solely on comment k of the Restatement (Second) of Torts, which does not exempt distributors from strict liability. Rather, comment k states that a seller of pharmaceuticals is not strictly liable *if* the products are properly prepared and

---

[5] Under the "learned intermediary" doctrine, a drug manufacture has no duty to warn the ultimate consumer, the patient, so long as adequate warnings are given to the doctor. Carlin, 13 Cal. 4th at 1108-09, 1116; Carmichael v. Reitz, 17 Cal. App. 3d 958, 994 (1971).

7

EXHIBIT 5

marketed, and proper warning is given.[6]

Finally Merck argues that "Plaintiffs cite no case holding a pharmaceutical supplier like McKesson liable for distributing an FDA-approved medication[.]" Opp. at 10. However, it is Merck's "heavy burden" to show "absolutely no possibility" that Plaintiffs could prevail on their strict liability claim against McKesson. See Plute 141 F. Supp. 2d at 1008; Cavallini, 44 F.3d at 259; Little, 227 F. Supp. 2d at 849. As Merck has not meet this burden, it has failed to demonstrate that McKesson was fraudulently joined.[7] Thus, this matter must be remanded because complete diversity of citizenship is lacking. See Morris, 236 F.3d at 1067.

### B. Misjoinder of Plaintiffs

The Eleventh Circuit has held that misjoinder of plaintiffs may be just as fraudulent as the fraudulent joinder of a defendant against whom a plaintiff has no claim. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), overruled on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000). In Tapscott, the court explained that while "mere misjoinder" is not fraudulent joinder, a party's attempt to misjoin parties may be "so egregious as to constitute fraudulent joinder." Tapscott, 77 F.3d at 1360.[8] However, the Ninth Circuit "has not found occasion to address Tapscott, and no other circuit has

---

[6] A "seller" of a product is "any person engaged in the business of selling products for use or consumption. It therefore applies to any . . . wholesale or retail dealer or distributor[.]" Restatement (Second) Torts § 402A, cmt. f.

[7] In light of the court's determination that Plaintiffs may have a cause of action against McKesson based on strict liability for failure to warn, the court need not address the viability of the remaining claims against McKesson.

[8] Tapscott "concerned two groups of plaintiffs that sued separate groups of defendants on almost entirely separate legal grounds." Brazina v. Paul Revere Life Ins. Co., 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003) (citing Tapscott, 77 F.3d at 1360).

EXHIBIT 5

adopted its rationale."  Brazina v. Paul Revere Life Ins. Co., 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003).  Because the Ninth Circuit has not adopted this novel theory, the court declines to do so here.[9]

## IV. CONCLUSION

Accordingly, the court **GRANTS** Plaintiffs' Motion to Remand.

IT IS SO ORDERED.

DATED: March 3, 2004

Nora M. Manella
United States District Judge

---

[9] Even under the Tapscott theory, it is unclear whether the joinder of the California plaintiffs is "so unrelated as to constitute egregious misjoinder."  See Brazina, 271 F. Supp. 2d at 1172; Tapscott, 77 F. 3d at 1360; In re Norplant Contraceptive Prods. Liab. Litig., 168 F.R.D. 579, 581 (E.D. Tex. 1996) (finding joinder of plaintiffs proper where defendants failed to adequately warn plaintiffs of risks and severity of side effects of prescription contraceptives, even though plaintiffs had different doctors).

EXHIBIT 5